**AFFIRM as modified and Opinion Filed March 28, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01556-CR

**JOHN KENT MATHIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 2-11-217**

## OPINION

Before Justices Moseley, Francis, and Lang
Opinion By Justice Francis

A jury convicted John Kent Mathis of sexually assaulting his girlfriend's fourteen-year-old daughter, recommended a probated sentence, and assessed a $10,000 fine. In five issues, appellant complains about the legal sufficiency of the evidence, evidentiary rulings, and two conditions of probation. We sustain appellant's complaint regarding the requirement that he pay for a Secure Continuous Remote Alcohol Monitor (SCRAM) as a condition of probation. We modify the trial court's judgment and affirm as modified.

Appellant dated J.P.'s mother for more than ten years, and they lived together for most of that time. By May 2011, they were still dating but were not living together. J.P., who was

fourteen years old, spent the night at appellant's house on May 21; her brother Trey and appellant's two teen-age children were also at the house. While there, J.P. divulged that she had been sexually assaulted by a fifteen-year-old boy a year earlier. Over J.P.'s objections, appellant insisted the assault be reported to the police the following day.

Later that night, while the other children were in their rooms sleeping or watching television, J.P. went to appellant's bedroom. Appellant told J.P. she "deserved" a drink, and the two drank whiskey and smoked cigarettes. J.P. began to feel the effects of the alcohol and took a shower before going to bed. She said she sat down in the shower and appellant came in, picked her up, and carried her to one of the two beds in his bedroom. Appellant then got on top of her, held her down by her arms and knees, and raped her. J.P. said appellant's penis penetrated her vagina. As he assaulted her, appellant said, "That's my girl." She was not sure how long the assault lasted, how it ended, or whether appellant ejaculated. She testified she could not remember the entire assault because she was "passing out or falling asleep." The next morning, appellant asked her if they had sex, and J.P. told him that he raped her. Appellant responded that it was "voluntary" and asked J.P. to "keep quiet about it."

Shortly after their conversation, appellant took J.P. and Trey home. On the way home, J.P. told her brother they would not be seeing appellant for a while. Trey asked why, and appellant responded that he had sex with J.P. J.P. said, "No, he raped me." When they arrived home, J.P. immediately told her mother what happened, and J.P. was taken to the hospital and examined by Susan Bander, a sexual assault nurse examiner.

Bander said her examination showed J.P. had a thin red abrasion just inside her vagina "probably" indicative of sexual activity and "multiple bruising on her body" that "could be" consistent with being pinned or held down. She noted no trauma to the labia majora, labia

2

minora, hymen, cervix, perineum, or anus. J.P. told Bander she was vaginally assaulted. Nevertheless, in addition to vaginal swabs, Bander also collected anal swabs because "dripping or gravity would pull semen down, or she could have not remembered, or he could have rubbed against her." The swabs were tested at the DPS crime laboratory, where the presence of spermatozoa was found on the anal swab. Further testing revealed the sperm fraction was consistent with the DNA profile of appellant with a probability that another Caucasian male could be the source at 1 in 124.1 quintillion. No sperm was found on the vaginal swabs.

While J.P. was at the hospital, appellant went to the Rockwall County Sheriff's Office to turn himself in. In a videotaped interview, appellant told the officer that J.P. told him he had raped her. Appellant said he had been drinking whiskey that night and did not know if J.P. drank anything. Sometime after 11 p.m. or midnight, he went to sleep. He said he woke up during the night and went to his bathroom, where he found J.P. sitting in the shower with the water running. J.P. asked him to help her to bed, and appellant said he put a T-shirt on her and put her in bed. Appellant said he had a "sex dream" that night but would not talk about it. The next morning, he woke J.P. and after a brief conversation, he said to her, "I hope I didn't get stupid last night." J.P. responded that he was "real stupid" and then told him "what [he] did." He said he was intoxicated that night and did not know what happened, but said J.P. had "no reason to lie."

In his fifth issue, appellant contends the evidence is legally insufficient to support his conviction. When assessing whether the evidence is legally sufficient to support a conviction, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury, as sole judge of the witnesses' credibility and the weight to be given their testimony, is free to accept or reject any and all

3

evidence presented by either side. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

A person commits sexual assault if the person intentionally or knowingly causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(C) (West 2011). The State's indictment in this case alleged appellant caused contact "with the anus or sexual organ" of J.P. by appellant's sexual organ. The testimony of a child victim alone is sufficient to support a conviction for sexual assault. TEX. CODE CRIM. PRO. ANN. art. 38.07(a) (West Supp. 2012); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd);.

Appellant argues the evidence is "inconsistent and self-contradictory" to the point of being legally insufficient. Specifically, he argues the scientific evidence contradicts J.P.'s testimony of what happened because J.P. testified the contact and penetration was vaginal only, and not anal, yet only the anal swabs tested positive for semen. He argues that semen should have been found on the vaginal swabs or on J.P.'s panties, if she was vaginally assaulted. Finally, he asserts only minimal trauma was found.

J.P. testified appellant held her down by her arms and knees and sexually assaulted her. The medical evidence corroborated her testimony. An examination showed a thin red abrasion just inside J.P.'s vagina. Also, multiple bruises were found on her arms and legs consistent with being pinned down. Appellant's semen was found on J.P.'s anus. That the semen was found on the anal swabs instead of vaginal swabs does not render the evidence legally insufficient. Bander explained semen could drip or gravitate downward from the vagina to the anus, and the jury apparently rejected appellant's theory that the semen was transferred from his bed to J.P. when he placed her there wet and naked.

In addition to J.P.'s testimony and the medical evidence, other evidence showed that while J.P. was at the hospital, appellant went to the Rockwall County Sheriff's Office and said he wanted to turn himself in. When asked what crime he had committed, he said his stepdaughter told him they "had sex last night." When questioned by the City of Heath police officer, he indicated he had been intoxicated and did not remember the incident, although he said J.P. "had no reason to lie." Considering all of the evidence in this case, we conclude it is sufficient for a rational jury to reasonably find that appellant's penis contacted J.P.'s sexual organ. We overrule the fifth issue.

In his first issue, appellant contends the trial court erred in limiting his cross-examination of J.P. regarding her alleged sexual assault by a teen-age acquaintance a year earlier, in violation of his Sixth Amendment confrontation right. Specifically, he contends he was precluded from asking J.P. about details of the allegations against the boy and, in particular, whether she was telling the truth. He argues that if J.P. falsely accused the boy, the evidence would be relevant as to whether or not she falsely accused appellant "of the same thing only hours later."

The State filed a pretrial motion in limine in which it sought to prevent appellant's counsel and defense witnesses from mentioning or referring to "[e]vidence of sexual promiscuity or past sexual behavior of [J.P.], pursuant to Rule 412 of the Texas Rules of Evidence." Before any witness testified, the following discussion occurred:

> [TRIAL COURT]: What do you have?
>
> [PROSECUTOR]: Judge, briefly two things. I know we had discussed a couple of motions in limine that the State had made previously, one regarding the defendant's - - excuse me, the victim's sexual history, Your Honor. I've learned from my witnesses there may have been some discussion with Mr. Blessing [defense counsel] regarding calling - - I don't know calling on the phone or calling to the stand - - [the father of the 15-year-old boy] that we've discussed previously in chambers regarding the

5

previous - - the previous sexual encounter. *I just want to be clear that questions can be asked of her about whether or not that incident happened*, but that any extraneous, extrinsic evidence regarding that is inadmissible.

[TRIAL COURT]: *That's right*.

[DEFENSE COUNSEL]: No, we have the boy subpoenaed. And because of his age, the only way we can subpoena is through his father.

[PROSECUTOR]: But he shouldn't be - -

[SECOND PROSECUTOR]: Clarify if I'm wrong, Judge, but was your ruling that the outcry concerning previous sexual - -

[TRIAL COURT]: Yeah, because that's all - - that's all the argument was for was to show why she didn't want to have that reported. *The details of it or whether it happened or not - -*

[PROSECUTOR]: Or any witnesses about it.

[TRIAL COURT] *- - is collateral. We're not going to go into that*. But I did say you can - - you don't have to just generically say that something was gonna be reported. You can say what it was.

[SECOND PROSECUTOR]: But you can't go into the facts of the encounter itself by witnesses or anything else.

[DEFENSE COUNSEL]: I understand. I know.

[TRIAL COURT]: Or through her. I mean for that matter.

[SECOND PROSECUTOR]: Or through her.

[DEFENSE COUNSEL]: I understand.

[TRIAL COURT]: You can ask her what she said. What else?

[SECOND PROSECUTOR]: We have a subpoena for the boy. That's why I'm being guarded about it.

[DEFENSE COUNSEL]: I got the subpoena for the boy last week.

[PROSECUTOR]: I just want to be clear about that.

It is clear from the above exchange there was an earlier discussion on this issue that is not contained in our record. It is unclear from the above exchange whether the trial court did in fact preclude appellant from asking J.P. if she had been previously sexually assaulted. At one point, the trial court indicates that questions could be asked about "whether or not that incident happened" but then also stated whether it happened was "collateral" and "[w]e're not going to go into that." Regardless, to preserve error in the exclusion of evidence, the proponent is required to make an offer of proof and obtain a ruling. *Reyna v. State*, 168 S.W.3d 173, 176 (Tex. Crim. App. 2005). Additionally, a party must not only tell the judge that the evidence is admissible but must also explain why it is admissible. *Id.* at 177.

During the above exchange, appellant made no statements about what evidence he wanted to adduce, the purpose of such evidence, or that he disagreed with the trial court's ruling. Even if we assume the above exchange was sufficient to apprise the trial court that appellant wanted to delve into an alleged prior false accusation, appellant did not offer any legal basis for the admission of such evidence. And, he specifically did not complain that the exclusion of such evidence violated his Sixth Amendment rights. Because appellant did not argue that exclusion of the evidence would violate his constitutional right to confrontation, he has failed to preserve this complaint for review. *See id.* To the extent he suggests he was denied his constitutional right to present a defense, he likewise has waived that complaint. We overrule the first issue.

In his second issue, appellant contends the trial court abused its discretion by denying admission of J.P.'s medical records from Timberlawn Mental Health System into evidence and his sub rosa proffer of her oral testimony related to her hospitalization.

After a five-day stay, J.P. was discharged from Timberlawn two weeks before the instant offense occurred. Appellant offered J.P.'s Timberlawn medical records with a business records

7

affidavit. The State objected that the records were irrelevant, had not been on file for fourteen days as required by Texas Rule of Evidence 902(10)(a), and had no sponsoring witness. Appellant acknowledged the records had not been on file for fourteen days and did not contradict the prosecutor's statement of no sponsoring witness. The trial judge noted he had reviewed the medical records and they reflected "a diagnosis of depression, and it's described as a single episode." He then sustained the State's objection on both relevancy and business records affidavit grounds.

Appellant asked to make an offer of proof by questioning J.P., which the trial court allowed. Appellant asked J.P. eleven questions related to when she was admitted to Timberlawn, if she had been depressed and for how long, and if she attempted suicide by drinking acetone. J.P. testified she was committed to Timberlawn in May 2010 for depression, but she did not know how long she had been depressed or why. She also acknowledged attempting suicide. At the conclusion of the offer of proof, appellant asked that either J.P.'s testimony, the medical records, or both be admitted and asserted the evidence was "relevant to the issue of J.P.'s mental state at or around the time of the alleged offense[.]" The trial court again denied admission of the evidence.

On appeal, appellant acknowledges the business records affidavit is subject to the fourteen-day advance filing rule, but he asserts the custodian of records was "subpoenaed to trial personally and could have proved up the records" under Texas Rule of Evidence 803(6). He does not, however, direct us to any place in the record to support his assertion nor does the record show he apprised the trial court that he had a sponsoring witness ready. Because appellant has not shown that the records were—or could be—properly authenticated, we conclude the trial court did not abuse its discretion by excluding them.

8

Appellant also asserts the trial court erred by excluding the testimony contained in the offer of proof. Texas Rule of Appellate Procedure 38.1(h) requires an appellant to include in his brief "a clear and concise argument for the contentions made, with appropriate citations to authorities and the record." TEX. R. APP. P. 38.1(h). Here, appellant "submits the cases and arguments under Issue 1, related to an accused's constitutional right to cross-examination, confrontation and right to present a defense to the criminal charges against him." Appellant's argument in the previous issue went to an alleged prior false allegation of sexual assault. Within this issue, he has made no attempt to apply relevant law to the facts of this case and, in particular, the facts adduced in the offer of proof. We therefore conclude the issue is inadequately briefed.

Even if we considered the issue properly briefed, we would conclude the trial court did not abuse its discretion by excluding the evidence. Evidence of a mental illness or disturbance that a witness has suffered in the recent past—before the event in question occurred—may be admissible. *Virts v. State*, 739 S.W.2d 25, 28 (Tex. Crim. App. 1987). Its admissibility must be decided on an ad hoc basis, and deference must be given to the trial court initially deciding the issue. *Id*. An accused's right to cross-examine a testifying State's witness includes the right to impeach the witness with relevant evidence that might reflect, among other things, an impairment or disability affecting the witness's credibility. *Id*. at 29. Cross-examination of a testifying State's witness to show the witness suffered a recent mental illness or disturbance is proper, provided such mental illness or disturbance is such that it might tend to reflect on the witness's credibility. *Id*. at 30. However, the mere fact that the witness has in the recent past suffered or received treatment for a mental illness or disturbance does not, for this reason alone, cause this kind of evidence to become admissible impeachment evidence. *Id*.

9

Here, the offer of proof showed J.P. had attempted suicide and was admitted to Timberlawn for depression in May 2010, before this incident occurred. Appellant does not explain how J.P.'s depression was relevant to impeach J.P.'s credibility as a witness, her mental stability, or her memory of the events. To the extent he suggests he was denied the opportunity to question J.P. about her medication and its effect, the record does not show appellant ever attempted to ask J.P. those questions or that the trial court prohibited him from doing so.[1] Further, he never asked any of those questions when he made his offer of proof, so the trial court was not given the opportunity to consider that issue at that time. Given the discretion accorded the trial court, we cannot conclude its decision to exclude the evidence adduced in the offer of proof was error. We overrule the second issue.

In his third and fourth issues, appellant contends the trial court erred by ordering him, as conditions of probation, to reimburse the county for the costs of his court-appointed attorney and to pay the costs of a SCRAM device.[2] In both issues, appellant asserts he was presumptively indigent and relies on *Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010), as authority to hold both conditions improper.

In *Mayer*, the defendant was sentenced to thirty years in prison, and the trial court ordered him to repay his appointed attorney's fees. Mayer appealed to the Amarillo Court of Appeals, arguing he was indigent and there was insufficient evidence under article 26.05 of the code of criminal procedure to support the attorney-fee order. The Amarillo court agreed and modified the judgment to delete the requirement of repaying court-appointed attorney's fees. *Mayer v. State*, 274 S.W.3d 898, 901–02 (Tex. App.—Amarillo 2008), *aff'd*, 309 S.W.3d 552

---

[1] We note at the time of the offer of proof, evidence was before the jury that J.P. was taking Prozac, an anti-depressant, at the time of her sexual assault examination.

[2] The SCRAM device is placed on a defendant's ankle and was described at the sentencing hearing as "technology [that] allows for . . . two devices to be combined into one that would allow for electronic monitoring as well as the alcohol monitoring." The device measures the individual's alcohol consumption through vapors emitted by the individual's skin.

(Tex. Crim. App. 2010). The State appealed. The court of criminal appeals first addressed whether Mayer procedurally defaulted the issue by not objecting in the trial court. *Mayer*, 309 S.W.3d at 554–56. The court concluded that no trial objection is needed to raise a claim of insufficient evidence and then addressed the merits of appellant's claim. *Id.* at 556–57.

Here, appellant has not been sentenced to prison; he has been placed on probation and is complaining about one of the conditions regarding his probation. *Mayer* did not address attorney's fees or other payments levied as a condition of probation. *Id*. at 556-57. We therefore conclude its holding with respect to preservation of error is inapposite in cases involving an order of attorney's fees as a condition of probation.

An award of probation is not a right, but a contractual privilege, and its conditions are terms of the contract entered into between the trial court and the defendant. *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999). Therefore, unobjected-to conditions are affirmatively accepted as terms of the contract. *Id*. If a defendant does not object to a condition, he "affirmatively waives any rights encroached upon by the terms of the contract." *Id*. A trial objection allows the trial court the opportunity to either risk abusing its discretion by imposing the condition over objection or reconsider the desirability of the contract without the objectionable condition. *Id*. at 534–35. Thus, assuming the probationer knew what the conditions were in time to object at trial, "[a] defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions he finds objectionable." *Id*. at 534.

Here, the State argues appellant did not object to either condition of probation. We begin with the attorney's fees. At the sentencing hearing, the trial judge orally ordered appellant "to reimburse all court costs in this case, including attorney's fees for your court-appointed

11

attorney." Appellant did not object at any time to the requirement he repay his court-appointed attorney's fees. Consequently, we conclude this issue is not preserved for our review. We overrule the third issue.

We reach a different conclusion with respect to the SCRAM device. At the punishment hearing, the trial judge told appellant he was going to order him, as a condition of probation, to successfully complete an Intermediate Sanctions Facility Alcohol Treatment Program (ISF). The prosecutor then asked the trial court to require appellant to wear a SCRAM device once he is released to the public following completion of the treatment program. The trial court agreed and ordered appellant to wear a SCRAM device after his release for a period of twelve months, at the end of which a review would be made to determine if he needed to continue wearing the device.

Appellant's trial counsel interjected to explain that appellant had been incarcerated for about sixteen months before trial and would be incarcerated another six months due to the ISF condition. Trial counsel said appellant was indigent, had "no money," and would be in "even worse shape" once he is released and asked that the county pay for the SCRAM device. The trial judge said he understood that "we don't want him to be immediately in violation because he can't afford to do those things." The trial judge then said appellant needed to "work with probation on those matters. They're the ones that recommended the monitoring to him." The trial judge asked an unidentified man how the electronic monitoring is paid, and the person responded, "The defendant pays for it."

The conditions of probation require appellant to wear a SCRAM device for electronic and alcohol monitoring for twenty-four months (contrary to the trial court's oral pronouncement of twelve months) at which time the device may be removed and replaced with an "ignition interlock device capable of photo start" if appellant has complied with SCRAM and the

12

conditions of his probation.  The condition further requires appellant to pay all costs associated with the monitor.

Given the discussion above, we conclude appellant clearly made the trial court aware he was indigent and could not afford to pay for a SCRAM device, at least as of the time of the sentencing hearing.  Consequently, we conclude appellant has preserved this issue for review.

We review the imposition of community supervision conditions under an abuse of discretion standard.  *LeBlanc v. State*, 908 S.W.2d 573, 574 (Tex. App.—Fort Worth 1995, no pet.).  Article 42.12, section 11(b) of the code of criminal procedure provides that a judge may not order a defendant to make any payments as a term or condition of supervision, except for "fines, court costs, restitution to the victim, and other conditions personally related to the rehabilitation of the defendant or otherwise expressly authorized by law."  TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11(b) (West Supp. 2012).  Further, the court is required to "consider the ability of the defendant to make payments under this article."  *Id*.

The undisputed evidence at the sentencing hearing showed appellant had been incarcerated the previous sixteen months and would be incarcerated for at least six months while completing the ISF program.  This evidence established that, at least as of the time of the sentencing hearing and upon his immediate release from ISF, appellant did not have the ability to pay for the SCRAM device.  Consequently, we conclude the trial court abused its discretion by requiring appellant to pay for the SCRAM device.  Appellant has not contested the trial court's requirement he wear a SCRAM device, only the requirement that he pay all costs associated with the device.  Because appellant has not contested the requirement he wear the device, this opinion does not preclude the trial court from requiring him to wear the device if it does so in a way other than requiring him to pay the costs for it.  Further, nothing in this opinion precludes the trial

13

court from ordering appellant to pay for the SCRAM device in the future if there is evidence of appellant's ability to pay. We sustain the fourth issue.

We modify the trial court's judgment to delete the condition that appellant pay for the costs of the SCRAM device. We affirm the trial court's judgment as modified. *See* TEX. R. APP. P. 43.2(b).

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Publish
Tex. R. App. P. 47
111556F.P05

14

S

# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN KENT MATHIS, Appellant

No. 05-11-01556-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 2-11-217.
Opinion delivered by Justice Francis;
Justices Moseley and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

> To delete from Condition 21 of the Order Imposing Conditions of Community Supervision the requirement that appellant John Kent Mathis pay all costs associated with the SCRAM monitor.

As modified, we **AFFIRM** the trial court's judgment.

Judgment entered March 28, 2013.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

15