

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0536-13

---

### JOHN KENT MATHIS, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### ROCKWALL COUNTY

---

COCHRAN, J., announced the judgment of the Court and delivered an opinion in which WOMACK, JOHNSON, and ALCALA, JJ., joined. KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined. MEYERS, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER and HERVEY, JJ., joined. PRICE, J., concurred.

O P I N I O N

This case raises the old adage that you can't get blood from a turnip. The court of

appeals modified the trial court's judgment to delete the requirement that appellant pay for

a SCRAM device,[1] concluding that a trial judge may not, over objection, order an indigent

---

[1] *Mathis v. State*, 397 S.W.3d 332, 341 (Tex. App.–Dallas 2013).

defendant to pay for a SCRAM device as a term of his probation without considering his financial ability.[2] We agree that the trial judge did not actually "consider" appellant's ability to pay for a SCRAM device at the time of sentencing. But we disagree that the remedy is to simply delete the requirement. Instead, we will remand this case for the trial judge to be given an opportunity to consider appellant's financial ability in deciding whether, at this time, to order appellant to pay for a SCRAM device.

## I.

When appellant was arrested and charged with sexual assault, he filled out a financial affidavit indicating that he was indigent. He was a 48-year-old carpenter who had lost his job a month earlier and was living in his former wife's home with two of his children. He swore that had no cash, no credit, no income, no real estate, no car, and he paid no rent, utilities, or other monthly bills. Given his indigency, the trial judge appointed him a lawyer, and granted his requests for investigative and expert witness fees. The trial judge set bail at $250,000, so appellant remained in jail for seventeen months until his trial.

The jury found appellant guilty of sexual assault and sentenced him to ten years' probation and an unprobated $10,000 fine. The trial judge sentenced appellant in accord with the jury's verdict, but he added the requirement of confinement in an Intermediate Sanction

---

[2] The State's sole ground for review reads as follows:
A probationer agrees to wear a SCRAM device as a reasonable condition of community supervision under Article 42.12 § 11(a) of the Texas Code of Criminal Procedure. How then did the trial court abuse its discretion, as the court of appeals concluded in construing § 11(b), when it did "consider" the probationer's ability to pay for the SCRAM device?

Facility (ISF) for six months to treat alcohol issues. At the sentencing hearing, the prosecution recommended, and the trial judge ordered, that appellant be fitted with a SCRAM device[3] once he was released from the ISF. Defense counsel objected to requiring appellant to pay for the SCRAM device because appellant was, and had been, indigent for so long. The trial court seemed to understand the dilemma:

> I don't know that there is–I get your point that as soon as he gets out six months from now or whenever it is, and he's already been in jail, that we don't want him to be immediately in violation because he can't afford to do those things.

But then the judge simply said that "he needs to work with probation on those matters" because "[t]hey're the ones that recommended the monitoring to him." The written terms of probation made appellant wear and pay for the SCRAM device for the first two years of probation.

After sentencing, appellant once again filled out a financial affidavit of indigency. Once again, he had zero assets and no job, having spent the previous seventeen months in jail. Appellant's sister wrote a letter to the judge stating that appellant is blind in one eye from a nail-gun accident and that he was in need of "serious and immediate medical attention to care for his hereditary glaucoma and cataracts to save his eyesight in his one remaining eye." She requested that appellant be released during the pendency of his appeal so that he

---

[3] "Secure Continuous Remote Alcohol Monitor." A SCRAM device is a bracelet that a defendant wears that continuously measures alcohol that is eliminated through the skin. *See e.g., Alvarez v. State*, No. 08-11-00160-CR, 2013 WL 1760809, *1-2 (Tex. App.–El Paso April 24, 2013) (not designated for publication) (setting out expert testimony about operations of a SCRAM bracelet).

could get quality medical attention.[4] But the trial judge set an appeal bond at $250,000, so appellant has remained in jail while this case was on appeal.

The Bill of Costs shows that appellant was charged with $219.00 basic court costs, $100.00 child-sexual-assault court costs, $34.00 for a DNA Probation fee, $25.00 for Crime Stoppers, a late payment fee of $25.00 (if he could not pay the bill of costs within 30 days of sentencing), a $10,000.00 fine, and $58.19 in restitution. A later document ordered appellant to pay $6,675.00 for his appointed lawyer at trial.[5] The terms of his probation required appellant to pay the $10,461.19 of fines and court costs (not including the attorney's fees) at a rate of $90 each month, beginning on December 1, 2011.[6] His probation terms also included an additional $50.00 per month community supervision fee and a $5.00 per month fee for urinalysis testing. Additionally, appellant was ordered to attend and complete an Alcohol/Drug Assessment Program within 45 days, the undetermined costs of which appellant was to pay. Also, appellant was required to pay a sex-offender supervision fee in the amount of $600.00, payable at $5.00 per month. Finally, appellant was required to secure

---

[4] She explained that she had bought a condominium for appellant to use once he was released from jail and that, when he obtained a job, he could begin to pay her back for it.

[5] Appellant complained on appeal that he could not be ordered to pay attorney's fees because he was indigent before, during, and after trial, but the court of appeals rejected his claim because his appointed attorney had not objected at trial to the assessment of the as-yet-undetermined attorney's fees. *Mathis*, 397 S.W.3d at 341 (noting that, when trial judge "ordered appellant to 'reimburse all court costs in this case, including attorney's fees for your court-appointed attorney[,]'" appellant did not object and therefore did not preserve that issue).

[6] The record contains a "Certificate that Defendant Is in Custody" signed on January 6, 2011, so appellant had not yet begun his six-month incarceration at the ISF.

a SCRAM ankle monitor, maintain it for the first twenty-four months of his probation, and pay "all costs associated with the SCRAM monitor."

In all, appellant was ordered to pay $10,461.19 in fines and court costs; $6,675.00 in attorneys fees; $600.00 in sex-offender supervision fees; and $6,000.00 in probation supervision fees for a total of $23,736.19 over the life of the ten-year probation or an average of nearly $200.00 a month. On top of that, appellant was ordered to pay the undetermined amounts for both the Alcohol/Drug Assessment Program and the SCRAM device.[7] Appellant was also ordered to perform 140 hours of community service.

The court of appeals held that appellant had properly preserved his complaint that he was indigent and could not afford to pay for a SCRAM device; therefore, it modified the trial court's judgment to delete the condition that appellant pay for the costs of the SCRAM device.[8] The court noted that (1) the trial judge may require appellant to wear a SCRAM device "if it does so in a way other than requiring him to pay the costs for it"; and (2) the trial judge could order appellant "to pay for the SCRAM device in the future if there is evidence of appellant's ability to pay."[9] The State appealed that modification.

---

[7] In one Texas case, the court of appeals, in deleting the requirement that the defendant pay for a SCRAM device, noted that the cost of monthly monitoring, in that jurisdiction at that time, was $360.00. *See Damron v. State*, No. 2-08-399-CR, 2010 WL 1006392, *1 n.6 (Tex. App.–Fort Worth March 18, 2010, no pet.) (not designated for publication) (when undisputed evidence at trial showed that he was "unable to pay," trial court could not require an indigent DWI defendant to pay for SCRAM device as a condition of probation; noting that SCRAM fees were $360 a month).

[8] *Mathis*, 397 S.W.3d at 342.

[9] *Id.*

## II.

Under Article 42.12, the trial judge has authority to set the conditions of community supervision.[10]  The Legislature has granted wide authority to the trial judge by stating that "[c]onditions of community supervision may include, but shall not be limited to, the conditions that the defendant shall . . ." and then listing numerous possible "basic" conditions.[11]  One permissible condition is submission to electronic monitoring.[12]  Ordering that a probationer wear a SCRAM device is a permissible probation condition.

A trial judge may not require a defendant to make any monetary payments as a term of community supervision except those for "fines, court costs, restitution to the victim, and other conditions related personally to the rehabilitation of the defendant or otherwise expressly authorized by law."[13]

Whenever monetary payments are proposed as a term of probation, "[t]he court shall consider the ability of the defendant to make payments in ordering the defendant to make payments under this article."[14]  This provision is mandatory: the trial judge *must* consider the

---

[10] TEX. CODE CRIM. PROC. art. 42.12, § 11(a).

[11] *Id.* § 11(a)(1)-(24).

[12] *Id.* § 11(a)(17).

[13] *Id.* § 11(b).

[14] *Id.*

defendant's ability to pay before imposing monetary conditions as a condition of probation.[15]

The Texas Legislature, like the United States Supreme Court, is "sensitive to the treatment of indigents in our criminal justice system,"[16] and this provision reflects that sensitivity.  It is a statutory recognition that the criminal-justice system may not punish people for their poverty and that probation is not merely for the rich.[17]  Thus,  trial judges are statutorily required to consider a probationer's financial ability to pay fees and costs associated with probation conditions before imposing such requirements.

We have not directly addressed the question of precisely how and to what degree a trial judge must "consider" a probationer's financial ability.  But, in *Ex parte Gonzales*,  we stated that if a trial judge "ignores the defendant's ability to make payments, whether the

---

[15] *See, e.g., Luquis v. State*, 72 S.W.3d 355, 363 & n.17 (Tex. Crim. App. 2002) ("[U]se of the word 'shall' generally indicates a mandatory duty.").

[16] *Bearden v. Georgia*, 461 U.S. 660, 672 (1983) (holding that a sentencing court could not revoke probation for a failure to pay a fine or make restitution absent evidence and findings that the probationer willfully failed to pay and that alternative forms of punishment would be inadequate to meet the State's interests).  In *Bearden*, the Supreme Court explained that the reason for a probationer's nonpayment is critical.  "If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection."  *Id.* at 668.

[17] *See id.* at 671 (noting that the State may not justify incarcerating a probationer who has made bona fide efforts to pay restitution by "lumping him together with other poor persons and thereby classifying him as dangerous.  This would be little more than punishing a person for his poverty.") (footnote omitted); *see also In re Antazo*, 473 P.2d 999, 1003-04 (Cal. 1970) (an indigent probationer ordered to pay a fine may not be imprisoned because he cannot immediately pay that fine; "[W]hen a fine in the same amount is imposed upon codefendants deemed equally culpable with the added provision for their imprisonment in the event of its nonpayment, an option is given to the rich defendant but denied to the poor one. While the poor man has the 'right' to obtain his release by payment of the fine, in actuality the 'right' is meaningless to him.").

payments are a condition of probation or for the costs of one's legal defense, it is possible that a defendant may be imprisoned solely due to his indigent status."[18]  We noted that the United States Supreme Court, in addressing an Oregon recoupment statute, stated that "'[t]he court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them,'"[19] and concluded that our Texas recoupment statute "should operate in the same manner."[20]  Thus, "the trial court's power to order reimbursement should be limited to the extent a defendant is reasonably able to do so."[21]

Although we have not spoken directly to the issue of how much or to what degree a trial court must "consider" a probationer's ability to pay fees and costs, one lower Texas court, in *Pennington v. State,* explained that this provision "does not mandate that the

[18] *Ex parte Gonzales*, 945 S.W.2d 830, 833-37 (Tex. Crim. App. 1997) (defendant who was held in contempt for failing to make court-ordered payments for her appointed appellate counsel was entitled to habeas-corpus relief because trial court did not consider her ability to make payments before ordering her confined for the failure to pay).  Texas law forbids such imprisonment.  Article 43.03(d) provides that, if a defendant or probationer who is ordered to pay a fine or costs defaults in payment, the trial judge may not order the probationer confined unless he conducts a hearing and makes a written determination that

    (1)      the defendant is not indigent and has failed to make a good faith effort to discharge the fines and costs; or

    (2)      the defendant is indigent and:

        (A)     has failed to make a good faith effort to discharge the fines and costs under Article 43.09(f); and

        (B)     could have discharged the fines and costs under Article 43.09 without experiencing any undue hardship.

TEX. CODE CRIM. PROC. art. 43.03(d).  It is this "undue hardship" test that statutorily limits the trial judge's ability to impose fines, costs, restitution, attorney's fees, and other probation fees.

[19] *Gonzales*, 945 S.W.2d at 834 (quoting *Fuller v. Oregon*, 417 U.S. 40, 43 n.5 (1974)).

[20] *Id.*

[21] *Id.*

payments be within the financial means of the probationers"[22] because the probationer could request extensions if necessary.[23] That decision, however, both predated our discussion in *Gonzales* and did not involve an indigent probationer.[24] Furthermore, *Pennington* is consistent with *Gonzales* to the extent that the trial judge has the discretion to assess probationary payments that are above a probationer's present income minus living expenses, if those payments are within limits that the probationer is "reasonably able" to pay. As Article 43.03(d) suggests, an indigent probationer should not be assessed payments that would cause him "undue hardship."[25]

Before a trial or appellate court can "consider" a defendant's ability to pay proposed payments, the defendant must provide evidence to support any claim that he is unable to make such payments without undue hardship. He should provide evidence of all assets and income as well as evidence of liabilities and living expenses so that the trial judge may compare one with the other and make any appropriate adjustments. In the case of indigent defendants being placed on community supervision, the trial judge will undoubtedly require

---

[22] *Pennington v. State*, 902 S.W.2d 752, 754 (Tex. App.–Fort Worth 1995, pet. ref'd).

[23] *Id*. ("Clearly, the trial court evaluated Pennington's other financial obligations and considered his probationary status. The trial court recognized the net effect of Pennington's inability to pay by the end of the two-year probationary period would potentially be grounds for an extension of time in which to pay the restitution.").

[24] *Id.* at 754-55 (setting out discussion between judge and defendant concerning defendant's income and financial obligations; trial judge explicitly noted that defendant "will need to live on something" and acknowledged that, if defendant "doesn't make that much" to cover monthly payments, "That's why we have extensions").

[25] TEX. CODE CRIM. PROC. art. 43.03(d)(2)(B).

the defendant to obtain a suitable job, so the defendant, prosecutor, or probation department may offer evidence of the likely range of anticipated income, as well as likely living expenses or other liabilities, such as child support orders.[26]

### III.

In the present case, the court of appeals held that appellant was indigent, presently incarcerated, and did not have any financial ability to pay the monthly cost of the SCRAM device.  It explained,

> The undisputed evidence at the sentencing hearing showed appellant had been incarcerated the previous sixteen months and would be incarcerated for at least six months while completing the ISF program. This evidence established that, at least as of the time of the sentencing hearing and upon his immediate release from ISF, appellant did not have the ability to pay for the SCRAM device. Consequently, we conclude the trial court abused its discretion by requiring appellant to pay for the SCRAM device.[27]

In its Brief on discretionary review, the State argues that appellant failed to produce any affirmative evidence at the sentencing hearing that he could not pay for the SCRAM monitoring.[28]  It claims that counsel's unsworn statements to the trial judge are not evidence. That may be true, but appellant's two sworn affidavits of indigency, plus the undisputed fact that he was appointed counsel both at trial and on appeal are some evidence of his continuing

---

[26] In this case, appellant had outstanding, unpaid orders for child support payments, but we offer no opinion on whether payment of those orders should take precedence over payments assessed as a condition of community supervision.

[27] *Mathis*, 397 S.W.3d at 342.

[28] State's Brief at 15.

indigency and present inability to pay for the SCRAM monitoring. Second, the State argues that the trial judge could not abuse his discretion because the costs of a SCRAM device were not legal services provided.[29] Although the latter proposition–SCRAM payments are not legal fees–is undeniably true, we fail to see how the former proposition–a trial judge does not abuse his discretion–follows. The trial judge is required to consider the probationer's financial ability *whenever* he orders payments under Article 42.12, not just when he orders payments for attorney's fees. The State notes that appellant has failed to show that he would be imprisoned for failing to pay for the SCRAM device as payment immediately became due, but appellant notes that "the monitor costs are payable to the third-party corporate provider beginning the first month and there is no reason to suppose that the monitor would be provided without payment."[30]

Third, the State claims that the trial judge did, in fact, "consider" appellant's ability to pay for the SCRAM monitoring, because he stated that he understood appellant's argument that he was currently indigent and would remain so until after he was released from custody.[31] The trial judge may have recognized the problem, but the present record does not

[29] State's Brief at 17.

[30] Appellant's Brief at 7. The record does not reflect how much the SCRAM device costs to install or what the monthly monitoring cost is. The record does not show whether the probation department pays the costs of the SCRAM device and then bills the defendant (and, if so, whether an indigent defendant may obtain an extension if he cannot pay immediately), or whether the SCRAM device provider requires payment before installation. These are matters that the trial judge might well consider in determining a probationer's financial ability to pay for a SCRAM device.

[31] State's Brief at 10.

support a conclusion that he "considered" appellant's indigency when he simply ordered appellant to "work with probation" because "They're the ones who recommended the monitoring[.]" Although the record shows that appellant was indigent both before and after trial, that does not inevitably and necessarily mean that he would remain indigent once he has been released and is able to look for a job.

The State relies on *Pennington*, discussed above, and *Chauncey v. State*,[32] for the proposition that the trial judge did consider appellant's financial ability in ordering the SCRAM payments. But, as we have already noted, these cases were decided before our decision in *Ex parte Gonzales*, which stated that trial courts should order payments only if the defendant is, or might become, reasonably able to pay them, and those cases did not involve an indigent defendant.[33] Although one of the terms of probation is that appellant "shall work faithfully at suitable employment as far as possible," and the trial judge may reasonably assume that appellant will be able to obtain some type of carpenter job when he is released from the ISF, there is nothing in the record that demonstrates that he would be

---

[32] 837 S.W.2d 179 (Tex. App.– El Paso 1992), *aff'd on other grounds*, 877 S.W.2d 305 (Tex. Crim. App. 1994).

[33] In *Pennington*, the evidence showed that the defendant had a monthly income of $3352, he had debt-free cars, and he was sending his child to a private school. The trial judge reasonably found that he could tighten his belt, and, if he could not timely pay the restitution, he could ask for an extension of his probation. 902 S.W.2d at 754-55. In that case, "the trial court evaluated Pennington's other financial obligations and considered his probationary status." *Id.* at 754. In *Chauncey*, the evidence showed that the defendant had a household monthly income of $2800 and the court of appeals explicitly found "nothing in the record affirmatively indicat[ing] he cannot comply with the conditions of probation as imposed[.]" 837 S.W.2d at 184.

able to find a suitable job in the current market or that its likely income would allow him to support himself without "undue hardship" and also pay $90 per month in restitution and court costs, over $6,000 in attorney's fees, plus the monthly SCRAM fees.

Finally, the State argues that "[s]ince 'no law' categorically prohibited it, the trial court did not abuse its discretion in assessing the costs of a SCRAM device against [appellant]."[34]   But the State misreads the statute.   Article 42.12, §11(b) affirmatively mandates that the trial judge "shall consider" the probationer's financial ability in assessing any payments; the State is attempting to flip that statute into "need not consider" the probationer's financial ability.  This provision is like that in Section 13 of the same article, dealing with DWI probations.  There, under subsection (d), a DWI probationer may be required to participate in an alcohol-rehabilitation program and be ordered to "pay for all or part of the cost of such rehabilitation based on the defendant's ability to pay."[35]  We think that a trial judge who orders the use of a SCRAM device (which is generally ordered for DWI probationers under Section 13) may order the defendant to pay all or part of the costs of that device "based on the defendant's ability to pay."

The court of appeals explained that the trial judge may still (1) order appellant to wear a SCRAM device that is paid for by the county;[36] or (2) modify the conditions of probation

---

[34] *Id.* at 18.

[35] TEX. CODE CRIM. PROC. art. 42.12, § 13(d).

[36] A $12 per diem cost of a SCRAM device is a significantly lower cost to the county than the approximate $65 per diem cost of keeping appellant in the Rockwall County Jail. *See*

if appellant's financial status changes and order him to pay for all or part of the costs of the

SCRAM device based upon his ability to pay at that time.  But, if the trial judge conducts a

hearing to consider evidence that supports a present finding that the appellant will be able

to pay the SCRAM fees without undue hardship, then that condition need not be deleted.  We

therefore reverse the judgment of the court of appeals and remand the case to the trial court

for further proceedings consistent with this opinion.


Delivered: March 12, 2014
Publish

---

http://www.usmarshals.gov/foia/IGAs_Cap_Agreements/texas/rockwell_county.pdf (U.S. Marshall's agreement with county to pay $65 per diem for housing federal prisoners in the Rockwall County Jail).