ACCEPTED
04-15-00235-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/12/2015 1:04:15 PM
KEITH HOTTLE
CLERK

**No. 04-15-00235-CR**

IN THE

FOURTH COURT OF APPEALS

OF TEXAS

AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

08/12/2015 1:04:15 PM

KEITH E. HOTTLE
Clerk

**SABRINA NICOLE ANGEL**,
Appellant

**v.**

**THE STATE OF TEXAS**,
Appellee

TRIAL CAUSE NO. 436067
APPEAL FROM COUNTY COURT NO. 13 OF
BEXAR COUNTY, TEXAS
HONORABLE CRYSTAL CHANDLER, JUDGE PRESIDING

**APPELLANT'S BRIEF**

ORAL ARGUMENT IS
NOT REQUESTED

RICHARD B. DULANY, JR.
Assistant Public Defender
Bexar County Public Defender's Office
101 W. Nueva St., Suite 370
San Antonio, Texas 78205
(210) 335-0701
FAX (210) 335-0707
richard.dulany@bexar.org
Texas Bar No. 06196400

ATTORNEY FOR APPELLANT

## Identity of Parties and Counsel

Pursuant to TEX.R.APP.P. 38.1(a), the parties are as follows:

**Sabrina Nicole Angel** was the Defendant and is the Appellant.

The **State of Texas**, by and through the Bexar County District Attorney's Office, prosecuted this case and is the Appellee.

For the State:
At trial:

**Nicole Meyer**
**Amanda Henarie Vasquez**
Assistant District Attorneys
Bexar County District Attorney's Office
Paul Elizondo Tower
101 W. Nueva St., Fourth Floor
San Antonio, TX 78205

On appeal: **Nicholas A. LaHood/Appellate Section**
Bexar County District Attorney's Office
Paul Elizondo Tower
101 W. Nueva St., Suite 710
San Antonio, TX 78205

For the Appellant:
At trial:

**Theresa A. Connolly**
Texas Bar No. 00790014
Attorney at Law
106 S. St. Mary's, Suite 260
San Antonio, TX 78205

On appeal: **Richard B. Dulany, Jr.**
Texas Bar No. 06196400
Assistant Public Defender
Bexar County Public Defender's Office
101 W. Nueva St., Suite 370
San Antonio, TX 78205

ii

<u>The Trial Court</u>:
Hon. **Crystal Chandler,** Judge Presiding
County Court at Law No. 13
Cadena-Reeves Justice Center
300 Dolorosa Street, Third Floor
San Antonio, TX 78205

# Table of Contents

Identity of Parties and Counsel ...................................................................................ii

Table of Contents ...................................................................................................iv

Index of Authorities ..............................................................................................vi

A Note on Record References ...............................................................................viii

Certificate of Compliance with Word Limit .........................................................viii

Statement of the Case ..............................................................................................1

Statement Regarding Oral Argument ......................................................................2

First Issue for Review (Presented) ..........................................................................3

    **The trial court erred in denying Appellant's requested jury instruction on necessity.**...................................................................................................3

Second Issue for Review (Presented) ......................................................................3

    **The trial court orally pronounced that the $1,000 fine would be "fully probated," so the judgment must be modified reflect that the fine was probated and was not "ordered executed."**.............................................3

Third Issue for Review (Presented) .........................................................................3

    **The trial court erred in ordering Appellant to pay $100 to the Battered Women's Shelter without considering her financial ability to pay that cost.** ......................................................................................................3

Statement of Facts ...................................................................................................4

Summary of the Argument.......................................................................................11

Argument..................................................................................................................13

    First Issue for Review (Restated) ............................................................... 13

    Second Issue for Review (Restated).......................................................... 20

Third Issue for Review (Restated)................................................................ 22

Conclusion and Prayer for Relief................................................................25

Certificate Of Service................................................................25

# Index of Authorities

**Cases**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984) .............................................. 17

*Bowen v. State*, 162 S.W.3d 226 (Tex. Crim. App. 2005) ................................................. 19

*Brazelton v. State*, 947 S.W.2d 644 (Tex. App.—Fort Worth 1997, no pet.) ....... 14, 15, 16

*Burt v. State*, 445 S.W.3d 752 (Tex. Crim. App. 2014) ..................................................... 20

*Darty v. State*, 994 S.W.2d 215 (Tex. App.—San Antonio 1999, pet. ref'd) ................... 19

*Devine v. State*, 786 S.W.2d 268 (Tex. Crim. App. 1989) .................................................. 15

*Garcia v. State*, 57 S.W.3d 436 (Tex. Crim. App. 2001) ...................................................ii, 1

*Granger v. State*, 3 S.W.3d 36 (Tex. Crim. App. 1999) ..................................................... 13

*Hamel v. State*, 916 S.W.2d 491 (Tex. Crim. App. 1996) .................................................. 13

*Hayes v. State*, 728 S.W.2d 804 (Tex. Crim. App. 1987) .................................................. 14

*Mathis v. State*, 424 S.W.3d 89 (Tex. Crim. App. 2014) ............................................. 23, 24

*Miller v. State*, 815 S.W.2d 582 (Tex. Crim. App. 1991) .................................................. 14

*Muniz v. State*, 851 S.W.2d 238 (Tex. Crim. App.), cert. denied, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993) .................................................................................... 14

*Pennington v. State*, 54 S.W.3d 852 (Tex. App.—Fort Worth 2001, pet. ref'd) . 13, 14, 15, 17

*Reese v. State*, 877 S.W.2d 328 (Tex. Crim. App. 1994) .................................................. 13

*Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013) ................................................. 17

*Shafer v. State*, 919 S.W.2d 885 (Tex. App.—Fort Worth 1996, pet. ref'd) ..................... 14

*Thompson v. State*, 108 S.W.3d 287 (Tex. Crim. App. 2003) ............................................ 20

*Warren v. State*, 565 S.W.2d 931 (Tex. Crim. App. [Panel Op.] 1978)............................14

*Williams v. State*, 432 S.W.3d 450 (Tex. App.—San Antonio 2014, pet. ref'd) ..............15

**Statutes**

TEX. CODE CRIM. PROC. ANN. art. 42.12 §11(b) (West 2015)...........................................23

TEX. CODE CRIM. PROC. ANN. art. 42.12 §11(h) (West 2015)...........................................23

TEX. CODE CRIM. PROC. ANN. art. 42.12 §19(a) (West 2015) ..........................................24

TEX. PENAL CODE ANN. § 9.22 (West 2015) ......................................................................14

TEX. PENAL CODE ANN. § 1.07(a)(42) (West Supp. 2015) .................................................17

TEX. PENAL CODE ANN. § 22.01(a) & (b) (West 2015) ........................................................ 1

TEX. PENAL CODE ANN. § 31.03(e)(4)(A) (West 2011).......................................................... 1

**Other Authorities**

Black's Law Dictionary 676 (5th ed. 1979)........................................................................15

**Rules**

TEX. R. APP. P. 9.10(a)(3)....................................................................................................4

TEX.R.APP.P. 9.4(i)(1)....................................................................................................viii

TEX.R.APP.P. 9.4(i)(2)(B) ..............................................................................................viii

## A Note on Record References

The reporter's record in this case consists of five volumes. Volume 1 is the Master Index. Volume 5 is the Exhibit Index. References to the reporter's record will be: ([Volume Number] RR at ___ ).

**NOTE**: A "Volume 4" from trial cause number 446387 was erroneously filed as the "Volume 4" of the reporter's record in this case. For that reason, references to Volume 4 of the reporter's record in this brief are to the Volume 4 (from both trial cause numbers 436067 and 436068) that was filed in Appeal No. 04-15-00236-CR.

The clerk's record consists of a single volume. Thus, a reference to the clerk's record will be: (CR at ___ ).

## Certificate of Compliance with Word Limit

Pursuant to TEX.R.APP.P. 9.4(i)(1) & (i)(2)(B), the word count, from the beginning of the Statement of Facts until, but excluding, the signature block, is: 4,674. The total word count is 6,038.

TO THE COURT OF APPEALS FOR THE FOURTH COURT OF APPEALS DISTRICT OF TEXAS:

This brief is filed on behalf of Appellant, Sabrina Nicole Angel, by Richard B. Dulany, Jr., an Assistant Public Defender with the Appellate Unit of the Bexar County Public Defender's Office. This is an appeal from a jury trial upon Appellant's plea of "not guilty" to the charged offense.

## Statement of the Case

Appellant, Sabrina Nicole Angel, was charged by information with assault causing bodily injury against a family or household member, a Class A misdemeanor.[1] (CR at 8). The offense was alleged to have been committed in Bexar County, Texas, on or about June 19, 2013. (CR at 8). A jury found Appellant guilty of the charged offense and she was placed on community supervision for one year, to begin on March 27, 2015. (CR at 30-31, 33). The trial court accurately certified that Appellant has the right of appeal. (CR at 32). Appellant was found to be indigent, and the Bexar County Public Defender's Office was appointed to represent her on appeal. (CR at 41). Trial counsel timely filed a notice of appeal on Appellant's behalf (CR at 39), and this appeal follows.

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(a)(1) & (b) (West 2015).

## **Statement Regarding Oral Argument**

The issues raised in this appeal may be determined from the record and cited authority alone. For that reason, undersigned counsel does not request oral argument, but will present oral argument if it is requested by the State.

## First Issue Presented for Review (Presented)

The trial court erred in denying Appellant's requested jury instruction on necessity.

## Second Issue Presented for Review (Presented)

The trial court orally pronounced that the $1,000 fine would be "fully probated," so the judgment must be modified reflect that the fine was probated and was not "ordered executed."

## Third Issue Presented for Review (Presented)

The trial court erred in ordering Appellant to pay $100 to the Battered Women's Shelter without considering her financial ability to pay that cost.

**Statement of Facts**

The voir dire proceedings are not summarized because they are not relevant to this appeal. The jury was sworn. (2 RR at 85). Trial on the merits began on March 26, 2015. (3 RR at 1). Appellant pleaded not guilty to the charged offense. (3 RR at 13).

**Felipe Arevalo** was the State's first witness. He was 21 years old on the day of trial. Arevalo and Appellant are the biological parents of two children: V.A., a three year old girl, and E.A., a five-month old boy.[2] (3 RR at 20). On June 19, 2013, Arevalo was at his house with his then-girlfriend, Violet Lazarin.[3] He was keeping V.A. and E.A. for Appellant while she was at work. (3 RR at 21). Arevalo claimed that he had been keeping the children "for several weeks." (3 RR at 22). Arevalo planned to go to his immigration lawyer's office that day, and then go to a second lawyer's office to see if he could get custody of the two children. (3 RR at 23). Arevalo talked to Appellant on the phone and told her he was "going to a lawyer." (3 RR at 25).

Arevalo drove to the lawyer's office. Violet, V.A. and E.A. were in the vehicle with him. (3 RR at 24). Appellant and her friend or aunt, named "Laura," were already there, waiting in the lawyer's parking area. (3 RR at 24). Everyone

---

[2] Initials are used in place of the names of the minor children. TEX. R. APP. P. 9.10(a)(3).
[3] Arevalo had already married and divorced Violet by the time this case went to trial. He called Violet "my ex-wife" while testifying. (3 RR at 21-23).

got out of their vehicles. Appellant saw Violet holding the baby boy, E.A., so Appellant started "hitting" Violet. (3 RR at 28). Arevalo had difficulty seeing what was happening because he was on the other side of the vehicle, a truck or SUV, but he claimed that he did see Appellant hit Violet on the ear and face. (3 RR at 28-29). Arevalo then ran around the vehicle and grabbed Appellant in "kind of like a bear hug." (3 RR at 29). He told her to "chill," but she was "all mad." (3 RR at 29). He moved Appellant away from Violet. (3 RR at 30). Arevalo heard Laura say to Appellant, "we have the kids, let's just leave." (3 RR at 30). He let go of Appellant, but she started hitting Violet again. (3 RR at 31). Arevalo grabbed Appellant again, and this time she bit his arm and hit his face. (3 RR at 31-32). He let Appellant go and she left with Laura and her children. Arevalo then called the police. (3 RR at 32). Photographs of Arevalo's injuries were admitted without objection as State's Exhibits 1-4. (3 RR at 33).

On cross-examination, Arevalo explained that he was neither a citizen nor a lawful permanent resident of the United States. (3 RR at 49). He agreed that he only kept the children, V.A. and E.A., one time, "for like a week." (3 RR at 51). Arevalo denied making the accusations against Appellant "to get some type of visa." (3 RR at 56). He said he was going to his immigration lawyer first, on June 19, 2013, and then to another lawyer to try to get "full custody" of the children, V.A. and E.A. (3 RR at 58). Appellant already had legal custody of their daughter,

5

V.A., when the alleged assault happened. (3 RR at 60). Arevalo agreed that Appellant intended for him to keep the children "just for a couple of hours" on the day of the alleged assault. (3 RR at 60). She called to say that she wanted to pick up the children, but Arevalo told Appellant that he was going to see his lawyer and she couldn't have them. (3 RR at 66). He did not invite Appellant to join him at the lawyer's office. (3 RR at 80).

Arevalo explained that he parked his truck at the lawyer's office and was getting V.A. out, while Violet was getting the baby boy, E.A., out from the passenger side of the truck. Arevalo saw Appellant "speed walking" to Violet's side of the truck to take E.A. away from her. (3 RR at 68). Appellant was "already attacking" Violet even though Violet still held E.A. in her arms. (3 RR at 71). Arevalo held Appellant with his arms and moved her to the back of the truck to stop her from hitting Violet. (3 RR at 74). Appellant's friend Laura, aided by Laura's daughters, were able to get the kids while Arevalo was restraining Appellant. (3 RR at 74). Laura told Appellant, "we have the kids, let's just go." (3 RR at 75). Arevalo let go of Appellant but she started hitting Violet again. (3 RR at 75). Arevalo grabbed Appellant for a second time, and she hit him and bit him. (3 RR at 75). He let go of her again and she left. Arevalo then "called the cops." (3 RR at 75). Arevalo said he never hit Appellant and only tried to restrain her to protect Violet. (3 RR at 78).

**Violet Lazarin** testified that she was dating Arevalo on June 19, 2013. (3 RR at 82). Violet said Appellant is Arevalo's "first baby mom." (3 RR at 82). She had never met Appellant until the day of the alleged assault. (3 RR at 105). Violet and Arevalo drove with the two children, V.A. and E.A., to the lawyer's office to discuss child custody. (3 RR at 84). Violet believed that Arevalo was supposed to give the children to Appellant that day. (3 RR at 84). As Violet was getting E.A. out of the car seat, she saw that Appellant was "having a discussion" with Arevalo. Violet said Appellant then saw her and "went towards" her to get E.A. (3 RR at 85). Appellant hit Violet because Violet wouldn't give E.A. to her. (3 RR at 86). Violet said, "…all [Appellant] was doing was trying to get her kids that day." (3 RR at 87). Violet finally released E.A. to Appellant, but Appellant kept hitting her anyway. (3 RR at 87). Appellant stopped hitting Violet when Arevalo restrained her the second time. (3 RR at 88). Violet never saw Appellant "do anything physical to" Arevalo. (3 RR at 88). Photographs of Violet's injuries were admitted without objection as State's Exhibits 5-8. (3 RR at 90).

On cross-examination, Violet said that Arevalo only kept the children for the one night before the alleged assault because Appellant was working late. (3 RR at 95). Violet believed that Arevalo was supposed to "exchange the kids back" to Appellant on the day of the alleged assault. (3 RR at 95). But Arevalo told her that he wasn't going to give the children back to Appellant and was going to his

7

lawyer's office instead. (3 RR at 96). Violet also said Arevalo told her not to give E.A. to Appellant because "he was trying to get custody." (3 RR at 97). She believed Arevalo "was trying to take the kids away from [Appellant] because he wanted custody." (3 RR at 99).

The State rested. (4 RR at 12).

**Sabrina Nicole Angel**, the Appellant, testified that she worked late the night before the alleged assault and asked Arevalo to watch the children. (4 RR at 17). Arevalo did not have scheduled visitation with the children that day. (4 RR at 44). Arevalo called Appellant on the morning of the alleged assault and told her he was not going to give the children back to her. (4 RR at 19). Appellant's breasts hurt because she was still breastfeeding E.A. (4 RR at 19). Arevalo called her a second time and said he was going to his lawyer's office. (4 RR at 20). Appellant knew where the lawyer's office was, so she had her aunt Laura take her there. (4 RR at 21).

Appellant saw Arevalo in the lawyer's parking lot, and saw a "random girl" holding her son, E.A. (4 RR at 22). Appellant twice asked the girl (Violet) to "give me my son." Violet said, "no," so Appellant grabbed E.A. from her arms and gave him to Laura. (4 RR at 22-23). Appellant had never seen Violet before, but was "in fear for" her baby because she was aware of the girl's reputation in the community.

(4 RR at 26). She also saw that her daughter, V.A., was still in the car. (4 RR at 23).

Appellant did not strike Violet before taking E.A. from her. (4 RR at 26). But she saw Violet swing at her, so she grabbed Violet's hair and punched her with "a closed fist." (4 RR at 27). While Appellant was fighting with Violet, she said Arevalo came up to her and "slams his hands into my mouth, he busts my lip." (4 RR at 28). He then put her in a "chokehold" and dragged her to the back of the truck. (4 RR at 28). She did not fight him back. She asked why he took her kids. (4 RR at 28). Laura's daughter told Appellant that they had both the kids and said, "let's just go." (4 RR at 29). Arevalo finally let go of Appellant's wrist, so she left with Laura and her children. (4 RR at 29-30).

Appellant testified that while she was pregnant with E.A., Arevalo said that he could "get legalized" or "get citizen" if she assaulted him. (4 RR at 36). "So that was his plan," she concluded. (4 RR at 36). She told him he was crazy. (4 RR at 36). Appellant said she did not bite Arevalo. (4 RR at 38). She slapped Arevalo first, before he hit her mouth. (4 RR at 39). She did it because she thought he was trying to take her kids away. (4 RR at 40).

On cross-examination, Appellant explained that she went to the lawyer's office to try to get her kids back from Arevalo. He did not ask her to meet him there. (4 RR at 41). She agreed that she slapped Arevalo "out of pure anger" and

9

not in defense of anyone. (4 RR at 43). Appellant did not call the police or take photos of the injuries that Arevalo caused to her. (4 RR at 43).

Both parties rested and closed. (4 RR at 51). Defense counsel requested a jury instruction on necessity. (4 RR at 54-55). Defense counsel conceded that Appellant slapped Arevalo first, but argued that Appellant had a reasonable belief that she had to protect herself and her children from "an immediate harm" by hitting Arevalo. (4 RR at 55). The trial court refused to give the requested instruction over defense counsel's objection. (4 RR at 65).

The jury found Appellant guilty of the charged offense. (4 RR at 106). The trial court determined punishment. (4 RR at 109). Appellant admitted that she hit Arevalo. (4 RR at 110). She lost her job because she could not take time off for the trial. (4 RR at 111). The trial court orally pronounced the sentence to include two years of probation, a fully probated $1,000 fine, an affirmative family-violence finding, and a $100 fee or fine to be paid to the "Battered Women's Shelter." (4 RR at 113-114). Appellant objected to the $100 fee by saying, "That's so not fair." (4 RR at 114). This appeal follows.

## Summary of the Argument

**First Issue for Review (Summarized):**

The trial court refused Appellant's requested jury instruction on the defense of necessity. Viewed in the light most favorable to that defense, the evidence showed that Appellant reasonably believed that a specific harm was imminent: that Arevalo and Violet Lazarin were trying to kidnap her children. Appellant also reasonably believed that her use of unlawful force against Arevalo and Violet was necessary to avoid the imminent harm. The trial court therefore erred in refusing to instruct the jury on necessity. This case must be reversed for a new trial because the trial court's error caused Appellant to suffer some harm in that the jury was allowed to convict without considering the defense of necessity, and the State was allowed to argue that the jury had no choice to convict simply because evidence was presented that Appellant struck Arevalo.

**Second Issue for Review (Summarized):**

The judgment must be reformed to reflect the trial court's oral pronouncement that the $1,000 fine imposed is "fully probated."

**Third Issue for Review (Summarized):**

The record shows that the trial court believed that "the law mandates" her to order Appellant to pay $100 to the Battered Women's Shelter. In fact, the trial court is required to consider Appellant's ability to pay before ordering any fees or

11

costs as conditions of probation. Because the record shows that the trial court believed the $100 fee was absolutely mandatory, this case should be remanded for the trial court to reconsider Appellant's ability to pay the $100 fee before it is imposed in whole or in part.

**The trial court erred in denying Appellant's requested
jury instruction on necessity.**

In her first issue, Appellant asserts that the trial court erred when it denied her requested jury instruction on necessity. Appellant's counsel specifically requested a jury instruction on necessity. (4 RR at 65)(CR at 24). But that instruction was not included in the charge over counsel's objection. (4 RR at 65)(CR at 17-22).

**Standard of review:**

A defendant is entitled to a jury instruction on every defensive issue raised by the evidence as long as such an instruction is properly requested. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Reese v. State*, 877 S.W.2d 328, 333 (Tex. Crim. App. 1994); *Pennington v. State*, 54 S.W.3d 852, 856 (Tex. App.––Fort Worth 2001, pet. ref'd). If a defendant produces evidence raising each element of a requested defensive instruction, she is entitled to the instruction regardless of the source and strength of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996) (recognizing that "an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense"); *Miller v. State*, 815

13

S.W.2d 582, 585 (Tex. Crim. App. 1991) (op. on reh'g); *Brazelton v. State*, 947 S.W.2d 644, 646 (Tex. App.—Fort Worth 1997, no pet.). The credibility of the evidence presented regarding the defense is immaterial in determining whether the instruction is required. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App.), cert. denied, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); *Pennington*, 54 S.W.3d at 856; *Shafer v. State*, 919 S.W.2d 885, 887 n. 1 (Tex. App.—Fort Worth 1996, pet. ref'd). A defendant's testimony alone is sufficient to require that a defensive issue be included in the jury charge. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987); *Warren v. State*, 565 S.W.2d 931, 933–34 (Tex. Crim. App. [Panel Op.] 1978). The evidence offered in support of a defensive issue is viewed in the light most favorable to the requested instruction. *Pennington*, 54 S.W.3d at 856; *Shafer*, 919 S.W.2d at 887 n. 1.

**The necessity defense:**

The necessity defense, as set out in the penal code, requires a reasonable belief and determination on the part of the defendant that the commission of the charged offense is immediately necessary to avoid imminent harm. *See* TEX. PENAL CODE ANN. § 9.22 (West 2015). The penal code provides that an actor's conduct is justified if: (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the

14

harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear. *Id.*

The first prong of the necessity defense requires a defendant to present evidence that she reasonably believed a specific harm was imminent. *Pennington*, 54 S.W.3d at 857. "Imminent" means " '[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.' " *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (quoting Black's Law Dictionary 676 (5th ed. 1979)); *Williams v. State*, 432 S.W.3d 450, 454 (Tex. App.—San Antonio 2014, pet. ref'd). Harm is imminent when there is an emergency situation and it is "immediately necessary" to avoid that harm. *Pennington*, 54 S.W.3d at 857. In other words, a split-second decision is required without time to consider the law. *Id.* Evidence of a generalized fear of harm is not sufficient to raise the issue of imminent harm. *Brazelton*, 947 S.W.2d at 648.

The second prong requires the defendant to present evidence that she reasonably believed that her conduct was immediately necessary to avoid the imminent harm. *Pennington*, 54 S.W.3d at 857. "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* As a general rule, the determination of the reasonableness of the

accused's belief is a question of fact and should be viewed from her standpoint at the time she acted. *Id*. But a belief that the charged conduct was immediately necessary to avoid imminent harm may be deemed unreasonable as a matter of law if undisputed facts demonstrate a complete absence of evidence of immediate necessity or imminent harm. *Brazelton*, 947 S.W.2d at 648-49.

**Appellant reasonably believed that a specific harm was imminent:**

Viewed in the light most favorable to the defense of necessity, the evidence showed that Appellant knew Arevalo had her children and did not want to give them back to her. She knew he was seeking legal advice on how to gain custody over them. She knew he was not a citizen, and so could reasonably have assumed that he might flee from the United States with the children. She also knew that Arevalo had help from his then-girlfriend Violet, and knew of Violet's reputation in the community. Appellant explained, "Didn't think I was ever going to see them again." (4 RR at 40). Moreover, Violet was in physical possession of E.A. and refused to hand him over to Appellant.

All of these facts together were sufficient for Appellant to reasonably believe that Arevalo was trying to kidnap her children. Thus, it was also reasonable for Appellant to believe that it was immediately necessary for her to use force—including slapping and hitting both Arevalo and Violet—to regain physical possession of both children and avoid the imminent harm that they would be

16

kidnapped. *See Pennington*, 54 S.W.3d at 857 (" 'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." (citing TEX. PENAL CODE ANN. § 1.07(a)(42) (West Supp. 2015)). Even if Appellant slapped Arevalo first, before he hit her, the slap was thrown *after* Appellant had already been forced to wrestle E.A. away from Violet. (4 RR at 43). When the record is viewed in the light most favorable to the defense, it is apparent that Appellant was entitled to an instruction on necessity. *Id.*, at 858.

**Harm:**

Properly preserved charge error requires reversal so long as Appellant suffered some harm from the trial court's failure to give the necessity instruction. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). In determining whether Appellant suffered some harm based on the charge error, the reviewing court must look at: (1) the charge as a whole; (2) the arguments of counsel; (3) the state of the evidence, including contested issues and the weight of the probative evidence; and (4) other relevant information in the record. *Reeves*, 420 S.W.3d at 816.

The charge included no defensive instructions at all. It authorized the jury to convict without considering if Appellant was trying to prevent an imminent harm. That alone weighs in finding that she suffered some harm. During closing

17

argument, the prosecutor told the jury, "You just have to decide that the defendant slapped or bit Felipe [Arevalo]." (4 RR at 100). In other words, the prosecutor was allowed to tell the jury that it didn't have to consider any defensive issues and had no choice but to convict Appellant because she admitted that she hit or slapped Arevalo. That was literally true given the erroneous omission of the necessity instruction. So, the State's jury argument also weighs in finding that Appellant suffered some harm. Appellant's entire defensive theory was that she committed the alleged assault to keep Arevalo from taking her children. Without the necessity instruction, the state of the evidence was overwhelmingly in the State's favor. Again, this factor weights in finding that Appellant suffered some harm.

Finally, this case was tried with cause number 436068, the alleged assault on Violet Lazarin. The trial court did give instructions on self-defense and defense of a third person with respect to Violet. (4 RR at 73-78). Those instructions concerned Violet's use of unlawful force against Appellant or E.A., and whether Appellant's own use of force against Violet was a reasonable response. (4 RR at 73-78). But the trial court also refused to give a necessity instruction with respect to the alleged assault on Violet. This likely only confused the jury further because necessity and self-defense or defense of third persons are separate defenses, with statutory limitations—like self-defense's statutory requirement that the actor did not provoke the other's use of force——that do not apply to necessity. *Bowen v. State*,

162 S.W.3d 226, 229 (Tex. Crim. App. 2005)(holding that "self-defense's statutorily imposed restrictions do not foreclose necessity's availability"). This is yet another factor in finding that Appellant suffered some harm from the omitted instruction which had the effect of denying the jury the opportunity to consider Appellant's defense of necessity.

**Conclusion:**

Appellant was harmed by the trial court's error in refusing her requested instruction on necessity. She is entitled to a new trial. *Darty v. State*, 994 S.W.2d 215, 220 (Tex. App.—San Antonio 1999, pet. ref'd). Appellant further asserts that if this conviction is reversed, she should also be entitled to a new trial in trial court cause number 436068 because the two cases were tried together and the error in this cause necessarily affected the jury's verdict in the other cause.

## Second Issue for Review (Restated)

**The trial court orally pronounced that the $1,000 fine would be "fully probated," so the judgment must be modified reflect that the fine was probated and was not "ordered executed."**

The trial court orally pronounced the fine as part of the sentence: "I assess a $1,000 fine, that fine will be fully probated." (4 RR at 112). But the judgment states that the fine is "ordered executed."[4] (CR at 28). The judgment also states that Appellant owes a total of $1,462.00, because the $1,000 fine is erroneously included in the total amount of the costs. (CR at 29).

"A written judgment is simply the 'declaration and embodiment' of that pronouncement. Therefore, when there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls." *Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014)(citations omitted). For that reason, the judgment must be amended to show that the fine was orally assessed to be "fully probated," and not as part of Appellant's sentence to be executed immediately. *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003)("The solution in those cases in which the oral pronouncement and the

---

[4] The judgment recites: "THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT THE IMPOSITION OF SENTENCE (EXCEPT THAT PORTION THEREOF PERTAINING TO A FINE OF $1,000.00 AND COSTS OF PROSECUTION $462.00, WHICH IS HEREBY ORDERED EXECUTED) IS SUSPENDED." (CR at 28).

20

written judgment conflict is to reform the written judgment to conform to the sentence that was orally pronounced").

## Third Issue for Review (Restated)

**The trial court erred in ordering Appellant to pay $100 to the Battered Women's Shelter without considering her financial ability to pay that cost.**

**Background:**

Before orally pronouncing sentence, the trial court heard Appellant's sworn testimony that she worked as a bartender, but likely lost her job because she was not allowed to take time off from work to attend her own trial. (4 RR at 111). Appellant also told the trial court that she took care of her daughter, V.A., by herself, and paid babysitters to care for her while she was at work. (4 RR at 112). Arevalo, the father of the two children, did not help Appellant out "at all." (4 RR at 110). Appellant's son lives with her grandmother. (4 RR at 111). Appellant explained, "I became a mom when I was 15." (4 RR at 110). Given her testimony, it is understandable that Appellant would have financial difficulties.

The trial court seemed to take Appellant's financial hardship into account by ordering that the $1,000 fine is "fully probated" and in setting the "supervisory fees at the minimum amount of $35." (4 RR at 114). But the trial court further stated: "Also, the law mandates that I assess a $100 fee to the Battered Women's Shelter, so I'm assessing a $100 fine to the Battered Women's Shelter." Appellant replied, "That's so not fair." (4 RR at 114). Trial counsel did not object to the

22

assessment of the $100 fee. The judgment does include a fee or cost for "FAMVI $ 100.00" in the itemized costs of prosecution. (CR at 29).

**Authority for assessing the $100 payment to the family violence center:**

If a judge grants community supervision after making a family-violence finding, "the judge shall require the person to pay $100 to a family violence center…" TEX. CODE CRIM. PROC. ANN. art. 42.12 §11(h) (West 2015). The trial court apparently assessed the $100 fee payable to the Battered Women's Shelter by authority of this statute.

**The trial court must consider the defendant's ability to pay:**

In *Mathis v. State*, the Court of Criminal Appeals recently held that "[t]he trial judge is required to consider the probationer's financial ability *whenever* he orders payments under Article 42.12, not just when he orders payments for attorney's fees." *Mathis v. State*, 424 S.W.3d 89, 96 (Tex. Crim. App. 2014) (emphasis in original). Article 42.12 itself states "[t]he court shall consider the ability of the defendant to make payments in ordering the defendant to make payments under this article." TEX. CODE CRIM. PROC. ANN. art. 42.12 §11(b) (West 2015). The Court of Criminal Appeals noted that "[t]his provision is mandatory[,]" and is "a statutory recognition that the criminal-justice system may not punish people for their poverty and that probation is not merely for the rich." *Mathis*, 424 S.W.3d at 94.

**This case should be remanded to the trial court for further consideration of Appellant's ability to pay all or part of the $100 fee:**

From the record, it is apparent that the trial court believed that "the law mandates" full payment of the $100 fee whenever probation is granted in a family-violence case. The trial court exercised her discretion in assessing a "minimum" supervisory fee, for example, but imposed the full $100 fee payable to the Battered Women's Shelter.[5] As discussed above, the trial court is *required* to consider Appellant's ability to pay before imposing any payment or monetary condition of probation. *Mathis*, 424 S.W.3d at 94. Because the record reflects that the trial court believed that "the law mandates" imposition of the full $100 fee without consideration of Appellant's ability to pay it, this case should be remanded to the trial court so that it may consider whether that $100 fee should be probated fully or in part, in light of Appellant's demonstrated financial hardship and likely inability to pay the fee. *Mathis*, 424 S.W.3d at 97-8.

---

[5] The minimum supervisory fee is actually $25 per month, and not $35 per month as the trial court imposed in this case. (CR at 114). TEX. CODE CRIM. PROC. ANN. art. 42.12 §19(a) (West 2015).

## Conclusion and Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Appellant prays that his conviction be reversed for a new trial, prays that the judgment be modified to reflect that the fine imposed is fully probated, prays that the case be remanded to the trial court to determine her ability to pay all monetary conditions of probation imposed, and prays for all other relief to which she is entitled.

Respectfully submitted,

/s/ Richard B. Dulany, Jr.

_____
RICHARD B. DULANY, JR.
Texas Bar No. 06196400

Assistant Public Defender
Bexar County Public Defender's Office
101 W. Nueva St., Suite 370
San Antonio, Texas 78205
(210) 335-0701
FAX (210) 335-0707
richard.dulany@bexar.org

ATTORNEY FOR APPELLANT

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Appellant's Brief has been delivered electronically to the Bexar County District Attorney's Office, Appellate Division, Paul Elizondo Tower, 101 W. Nueva St., Suite 710, San Antonio, Texas 78205, on **August 12, 2015**.

25

/s/ Richard B. Dulany, Jr.

_____

RICHARD B. DULANY, JR.