

# NUMBER 13-17-00475-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**BENITO MARTINEZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 36th District Court
### of San Patricio County, Texas.

---

# OPINION

### Before Justices Rodriguez, Contreras, and Benavides
### Opinion by Justice Contreras

Appellant Benito Martinez appeals the revocation of his community supervision for his failure to pay multiple community supervision fees. By three issues, Martinez argues: (1) the sentence imposed was a violation of article I, section 18 of the Texas Constitution; (2) the trial court abused its discretion when it found the alleged violations true; and (3)

the sentence imposed by the trial court was cruel and unusual.  Because we conclude

that the State failed to carry its burden to prove Martinez had the ability to pay and did

not, we reverse and remand.

## I.  BACKGROUND

In 2011, Martinez was indicted for bail jumping and failure to appear, a third-degree

felony.  *See* TEX. PENAL CODE ANN. § 38.10(f) (West, Westlaw through 2017 1st C.S.).  He

filed an affidavit of indigence and swore he had no cash, no credit, no income, no real

estate, no car, and that he paid no rent, utilities, or other monthly bills.  The trial court

found Martinez indigent, appointed counsel, and, after a jury trial, Martinez was found

guilty of the offense.

Martinez elected to have the judge assess punishment, and he was sentenced to

five years' incarceration, with the sentence suspended for five years of community

supervision.  The initial conditions of Martinez's supervision required him to pay:  a $60

statutory monthly fee, *see* TEX. CODE CRIM. PROC. ANN. art. 42A.652 (West, Westlaw

through 2017 1st C.S.) (providing that "a judge who grants community supervision to a

defendant shall set a fee of not less than $25 and not more than $60 to be paid each

month"); $250 for court costs and attorney's fees, at a rate of $50 per month[1]; and $50

for crime stoppers fees, at a rate of $10 per month.  Martinez was also required to submit

to two urinalyses (UA) per month and pay $7.50 for each to the supervision department.

Martinez was placed on community supervision on August 15, 2011.

**A.  Procedural History**

---

[1] Martinez petitioned for an "Extension for Payment Agreement," which the trial court granted, and it provided the repayment terms for the $250 in court costs.

During Martinez's time on community supervision, the trial court ruled on four motions to revoke his supervision. The first motion the trial court ruled on was an amended motion filed by the State on January 20, 2016. Martinez filed an affidavit of indigence and stated he had three dependent children aged 7, 10, and 13. He further stated in the affidavit that he earned unemployment benefits of $520 per month and had monthly expenses of: $300 for utilities, $640 for child support, $200 for groceries, $66 for phone services, and $640 for probation fees. Martinez was found to be indigent and had counsel appointed.

Martinez pleaded true to the allegations that he failed to report, pay court costs, pay the monthly statutory supervisory fee, and submit to UAs. The trial court found the allegations to be true and extended Martinez's supervision term by one year, sentenced him to thirty days in jail, and ordered him to perform 160 hours of community service. The trial court also added conditions to Martinez's supervision and required him to: submit to a psychological evaluation and pay a $50 fee; participate in the cognitive track program in the continuing care phase of the Coastal Bend Regional Intermediate Sanction Facility (CBRISF); participate in the reintegration/employment phase four of the cognitive track and pay $10-18 per day or 25% of his gross income to CBRISF for room and board while residing there; and submit to a period of sixty days of home confinement and pay a fee of $3.75 per day for each day on global positioning system monitoring.

Three months later, on May 12, 2016, the State filed its next motion to revoke and alleged Martinez used offensive language on two occasions against an individual at CBRISF. Martinez filed a copy of his earlier affidavit of indigence, was found indigent, and had counsel appointed. The trial court sentenced Martinez to thirty days in jail,

3

ordered him to participate in two additional programs, and continued him on community supervision.[2]

The State filed its third motion to revoke on February 16, 2017. It alleged that Martinez violated his supervision conditions by testing positive for alcohol in a UA and failing to pay multiple fees associated with his supervision. Martinez filed another affidavit of indigence, was found indigent, and had counsel appointed. The State, however, moved to dismiss this motion, and the trial court granted the dismissal on March 24, 2017. The trial court also amended appellant's conditions of supervision and required him to participate in two additional programs, observe curfew hours, and pay restitution to the supervision officer of San Patricio County of $44 for confirmation costs.[3]

The final motion to revoke, which is at issue in this appeal, was an amended motion filed by the State on August 7, 2017. In this amended motion to revoke, the State alleged Martinez violated his supervision conditions by failing to pay:

(1) the statutory monthly fee of $60 from February 2015 through June of 2017, being in arrears a total of $4,170;

(2) the crime stoppers fee of $50, at a rate of $10 per month, from September 2011 through June of 2017;

---

[2] The record does not reflect whether the trial court found both allegations of offensive language to be true, or just one. At the August 11, 2017 revocation hearing, the trial court noted: "There's no specific finding on that order that says what she found to be true or not true but she certainly imposed a sanction and you can't impose a sanction without having a true finding and it appears to be reflected and of course the court reporter is not reflected." The trial court's docket sheet states: "Allegation true." The record also does not reflect whether Martinez pleaded true or not true as to these alleged violations.

[3] "The judge of the court having jurisdiction of the case may, at any time during the period of community supervision, modify the conditions of community supervision." TEX. CODE CRIM. PROC. ANN. art. 42A.051(b) (West, Westlaw through 2017 1st C.S.); *see Simon v. State*, 442 S.W.3d 581, 584 (Tex. App.— San Antonio 2014, no pet.); *see also* TEX. CODE CRIM. PROC. ANN. art. 42A.301 (listing the basic discretionary conditions of community supervision a judge may impose).

(3) the psychological evaluation fee of $50 from February 2016;

(4) $790 in room and board fees from his stay in CBRISF from July 2016;

(5) $7.50 per urinalysis from August 2011 through June 2017, totaling $432.50; and

(6) $60 per month for court costs, totaling $1,035.[4]

Martinez again filed an affidavit of indigence in which he stated he had no monthly income or monthly expenses and that he had three dependent children. He was found indigent and had counsel appointed.

## B.    Revocation Hearing

The hearing on the State's amended motion to revoke took place on August 11, 2017. By the time of the hearing, Martinez had been on community supervision for six years, and he had made a single payment of $30 to the community supervision department and a payment of $200 to the district clerk for court costs.[5] Martinez pleaded not true as to all the allegations made by the State. At the hearing, the trial court heard testimony from Martinez's supervision officer, Rosie Franco, and from Martinez.

Franco testified that Martinez participated in the programs required by the conditions of his supervision and reported to her twice a month. According to Franco, as of the time of the hearing, she was not aware of Martinez having any money or income to pay any fees or of him having any bank accounts, stocks, or bonds.

The trial court then asked of Franco:

---

[4] Originally, the court assessed court costs of $250. It is unclear from the record what caused this discrepancy.

[5] Martinez's supervision officer testified that the $30 payment was made to the supervision department on June 12, 2012, but she did not provide a date for when the $200 payment was made to the district clerk.

5

| [The Court]: | Has he been employed since 2012 even one time? |
| [Franco]: | Yes, he has, Your Honor. |
| [The Court]: | Would you please elocute as to when he was employed, where he was employed and what he reported he was receiving? |
| [Franco]: | Just looking at November 7th of 2012 he was employed with Gulf Marine Fabricators. If I skip over to February of 2013, he was unemployed. Unemployed October 2013, August 1st 2016 he was employed with Torres Trucking Company. |
| [The Court]: | What did he do and what did he make? |
| [Franco]: | Actually, when I saw him he hadn't received a pay check yet. |
| [The Court]: | Did he tell you what he was going to make? |
| [Franco]: | No, he did not. |
| [The Court]: | And then after August 2016 what do you have in your chronos? |
| [Franco]: | I have a report September 2016 where he told me he was employed Voice in Pine [sic], $1,300 a week. September 30th, same location, $560 per week. October 2016, INP North America, $1,200. |
| [The Court]: | Per week? |
| [Franco]: | Per month. November 9th, the same thing, it was $300 a week. Then November 30th he reported he was unemployed. December 2016 he was unemployed, January 2017 he was unemployed. 26th of January 2017 unemployed. In March he was unemployed and then in April 25th 2017 Torres Trucking Company, $250. In May 12th 2017 he was unemployed. In May 23rd 2017 he was unemployed but he was receiving $250 every two weeks of unemployment benefits. June 13th, 2017 he reports that he received $260 every two weeks of unemployment. June 27th 2017 zero income, does not report unemployment since then. |

Martinez took the stand and testified he lacked the ability to make the payments.

6

| | |
|---|---|
| [Defense counsel]: | Why have you had the inability to pay? |
| [Martinez]: | Because probation—I have to see them twice a month and then they won't allow me to see them after working hours. |
| [Defense counsel]: | I'm not talking about reporting, I'm talking about financials; do you have the financial money to pay? |
| [Martinez]: | No, sir. |
| [Defense counsel]: | Have you been steadily employed? |
| [Martinez]: | No. |
| [Defense counsel]: | So you've been unemployed for periods but you have been employed? |
| [Martinez]: | Yes, sir. |
| [Defense counsel]: | And with the money that you were employed, what were you doing with the money when you were employed? |
| [Martinez]: | Just paying bills and paying my debts that I owe. |
| [Defense counsel]: | So you had obligations as well; is that correct? |
| [Martinez]: | Yes, sir. |
| [Defense counsel]: | So you had to pay utilities and rent? |
| [Martinez]: | Yes, sir. |
| [Defense counsel]: | First of all, do you have any savings or anything like that? |
| [Martinez]: | No, sir. |

The State then cross-examined Martinez:

| | |
|---|---|
| [State]: | How do you survive without money; what are you doing? |
| [Martinez]: | My aunt, I just stay at home. |
| [State]: | You just stay at home; do you have any disabilities? |

7

[Martinez]:       No, sir, I mean [I] go apply and stuff.

[State]:          You don't have any disabilities?

[Martinez]:       No, sir.

[State]:          When was the last time you looked for a job?

[Martinez]:       Actually, I got orientation today.

[State]:          When was the last time—before this when was the last time you looked for a job?

[Martinez]:       November whenever they let me go, probation, they didn't want to see me after certain hours so they let me go from my job.  That was the last time.

[State]:          If the Judge were to extend you, do you really have any desire to pay this money?

[Martinez]:       Yes, sir, why not?  As long as probation works with me.

[State]:          Well, let's put it this way; you've had jobs, right? And you didn't pay?

[Martinez]:       Yeah, because I kept getting let go or laid off.

[State]:          But you never paid.  You had an opportunity to pay but you didn't, right?

[Martinez]:       Yes, sir.

[State]:          Why didn't you pay?

[Martinez]:       Because probation, they don't want to work with me and I had to report three times a month and what job is going to let you go and miss three days out of the month?  So this has been going on and I keep telling my probation officer and then not only that, I don't have my driver's license so I can't just drive anywhere.  I have to get a cab or pay money out of my pocket and then I have told her to let me get my driver's license by going to these drug classes and this

8

DUI class that I had to do in order to get it back and she wouldn't allow me to do it so that I could function right in society.

The trial court found true the allegation that Martinez failed to pay the statutory monthly fee for August, September, October, and November 2016 and April, May, and June 2017—the months when Martinez was employed or received unemployment. The court reasoned: "Without other evidence from the community supervision or from the defendant specifying the days he may or may not have been employed, the other allegations I cannot make a true finding as to paragraph number one." The trial court also found true the allegations that Martinez failed to pay: the crime stoppers fee and the UA fee for the same months (August, September, October, and November 2016 and April, May, and June 2017); the psychological evaluation fee for February 2016; and the room and board fees for July 2016. The trial court stated "I find [the psychological evaluation fee and the room and board fees allegations] to be true as [Martinez] has been employed and has had earnings since February of 2016 on various dates[,] so I find true as to that." The trial court did not make a finding as to the State's allegation for failure to pay court costs.[6]

The trial court revoked Martinez's community supervision and sentenced him to three years in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

---

[6] The court also stated that any previous findings of true of Martinez's failure to pay fees for any months alleged in previous motions "carried over" and continued to be true. However, the trial court could only revoke Martinez's supervision for violations alleged in the underlying amended motion to revoke and not for violations that had been previously alleged by the State in other motions. *See Tapia v. State*, 462 S.W.3d 29, 39–40 (Tex. Crim. App. 2015); *Rogers v. State*, 640 S.W.2d 248, 251 (Tex. Crim. App. 1981) (en banc). Accordingly, we will only consider the violations found true by the trial court which were alleged in the State's amended motion to revoke.

9

## II.    SUFFICIENCY OF THE EVIDENCE

By his second issue, which we address first, Martinez argues there was insufficient evidence to show he had the ability to pay the fees.

## A.    Standard of Review

We review a trial court's order revoking community supervision for an abuse of discretion. *Carreon v. State*, 548 S.W.3d 71, 77 (Tex. App.—Corpus Christi 2018, no pet.) (citing *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013)). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated a condition of community supervision as alleged in the motion to revoke. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993) (en banc); *see Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). The preponderance of the evidence standard is met when the greater weight of the credible evidence before the trial court supports a reasonable belief that a condition of community supervision has been violated. *Rickels*, 202 S.W.3d at 763–64; *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). The trial court abuses its discretion in revoking community supervision if, as to every ground alleged, the State fails to meet its burden of proof. *Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984) (en banc).

In making this determination, we examine the evidence in the light most favorable to the trial court's findings to determine whether it could make the findings that were returned. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (detailing the legal sufficiency standard for reviewing a jury's verdict); *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The trial judge is the trier of fact and the arbiter of the credibility

of the testimony during a hearing on a motion to revoke supervision. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012); *Diaz v. State*, 516 S.W.2d 154, 156 (Tex. Crim. App. 1974). When we are faced with a record supporting contradicting inferences, we must presume that the factfinder resolved any such conflict in favor of its findings, even if it is not explicitly stated in the record. *See Montgomery*, 369 S.W.3d at 192*.*

## B.     Applicable Law

"Over the last twenty [plus] years, three sources of legal authority—the federal Constitution as interpreted by the Supreme Court precedent; Texas statutes; and Texas common law—have addressed the permissibility of revocation or incarceration when a defendant is unable to pay amounts due under community supervision." *Gipson v. State*, 383 S.W.3d 152, 156 (Tex. Crim. App. 2012) ("*Gipson I*").

Federal constitutional law "sets forth a mandatory judicial directive that requires the trial court to (1) inquire as to a defendant's ability to pay and (2) consider alternatives to imprisonment if it finds that a defendant is unable to pay." *Id.* (citing *Bearden v. Georgia*, 461 U.S. 660, 672 (1983)). "[I]f the probationer has made all reasonable bona fide efforts to pay . . . and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke community supervision automatically without considering whether adequate alternative methods of punishing the probationer are available to meet the State's interest in punishment and deterrence." *Bearden*, 461 U.S. 660–61; *Gipson I*, 383 S.W.3d at 156–57 (noting that "*Bearden* does not categorically prohibit incarceration of indigent defendants"). This is because revocation of community supervision for failure to pay when a defendant is unable to pay denies due process of law. *Bearden*, 461 U.S. at

11

665; *Stanfield v. State*, 718 S.W.2d 734, 735 n.2 (Tex. Crim. App. 1986) (en banc) (op. on reh'g); *Greathouse v. State*, 33 S.W.3d 455, 459 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

Texas, on the other hand, has an "ability-to-pay statute," which governs the burden of proof in the revocation of community supervision when the only violations alleged are for failure to pay court costs, community supervision fees, or attorney fees.[7]  *See* TEX. CODE CRIM. PROC. ANN. art. 42A.751(i) (West, Westlaw through 2017 1st C.S.); *Gipson I*, 383 S.W.3d at 157–58; *see also Rusk v. State*, 440 S.W.3d 694, 705 (Tex. App.— Texarkana 2013, no pet.) (noting that revocation is not the only option available to the trial court upon a finding that a condition of supervision has been violated and that only a willful failure to pay fees can support a revocation).  Between 1977 and 2007, the statute provided for an affirmative defense, with the burden of proof to be carried by the defendant, not the State.  *Gipson I*, 383 S.W.3d at 158 (citing former TEX. CODE CRIM. PROC. ANN. art. 42.12 § 8(c), Act of May 28, 1977, 65th Leg., R.S., ch. 342 (S.B. 23) §§ 1, 2, effective Aug. 29, 1977).  In 2007, however, the legislature amended the statute to place the burden of proof on the State to prove, by a preponderance of the evidence, that a defendant had the ability to pay and did not pay any of court costs, community

---

[7] The ability-to-pay statute states:

> In a community supervision revocation hearing at which it is alleged *only* that the defendant violated the conditions of community supervision by failing to pay community supervision fees or court costs or by failing to pay the costs of legal services as described by Article 42A.301(11), the state must prove by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge.

TEX. CODE CRIM. PROC. ANN. art. 42A.751(i) (West, Westlaw through 2017 1st C.S.) (emphasis added).

supervision fees, or attorney fees.[8]  *See* TEX. CODE CRIM. PROC. ANN. art. 42A.751(i); *Rusk*, 440 S.W.3d at 702; *Thomas v. State*, 379 S.W.3d 436, 441 (Tex. App.—Amarillo [Panel Op.] 2012, no pet.).

Finally, before the codification of the ability-to-pay affirmative defense in 1977, Texas common law required the State, when revoking a defendant's supervision for a failure to pay, to prove that the defendant had the ability to pay and intentionally did not pay.  *Gipson I*, 383 S.W.3d at 158; *see, e.g.*, *Herrington v. State*, 534 S.W.2d 331, 334– 35 (Tex. Crim. App. 1976); *Denton v. State*, 511 S.W.2d 311, 312–13 (Tex. Crim. App. 1974); *Szczeck v. State*, 490 S.W.2d 576, 577 (Tex. Crim. App. 1973); *McKnight v. State*, 409 S.W.2d 858, 859–60 (Tex. Crim. App. 1966).  The continued viability of the Texas common law, though, remains unclear, as it may have been superseded by the 1977 codification of the ability-to-pay statute.  *See Gipson v. State*, 428 S.W.3d 107, 117 (Tex. Crim. App. 2014) (Johnson, J., concurring) ("*Gipson II*"); *Gipson I*, 383 S.W.3d at 158– 59.  In *Gipson I*, Gipson's community supervision was revoked for his failure to pay "fees," which included "a court-ordered fine; court costs; and fees for supervision, pre-sentence investigation, and Crime Stoppers."  383 S.W.3d at 153.  The Texas Court of Criminal Appeals remanded the case and instructed the Beaumont court to consider whether the Texas ability-to-pay statute covered fines, and, if not, whether the common law applied to the alleged violation for failure to pay fines.  *Id.* at 158.  On remand, the Beaumont

---

[8] Prior to 2007, the ability-to-pay affirmative defense as articulated in the statute also applied to restitution and fines, but those references were deleted with the 2007 changes.  *See Lively v. State*, 338 S.W.3d 140, 143–44 (Tex. App.—Texarkana 2011, no pet.).  Currently, the code of criminal procedure provides for six factors a court must consider when revoking a defendant's supervision for failure to pay restitution.  *See* TEX. CODE CRIM. PRO. ANN. art. 42.037(h) (West, Westlaw through 2017 1st C.S.); *see, e.g.*, *Carreon v. State*, 548 S.W.3d 71, 77 (Tex. App.—Corpus Christi 2018, no pet.).  However, there is no analogous statutory provision applicable to the revocation of community supervision for failure to pay a fine. *See Gipson v. State*, 428 S.W.3d 107, 108–09 (Tex. Crim. App. 2014) ("*Gipson II*"); *Gipson v. State*, 383 S.W.3d 152, 158–59 (Tex. Crim. App. 2012) ("*Gipson I*").

court did not address whether the common law applied, and we have found no other decision addressing whether the Texas common law applies to monetary obligations not covered by the current Texas statutes, such as court-imposed fines. *See Gipson v. State*, 395 S.W.3d 910, 914–15 (Tex. App.—Beaumont 2013), *rev'd*, 428 S.W.3d 107, 108–09 (Tex. Crim. App. 2014).

Between 1977 and 2007, some decisions by the court of criminal appeals interpreted the codification as disposing of the common-law requirement that the State prove that a defendant's failure to pay was intentional or willful. *Gipson I*, 383 S.W.3d at 158 (citing *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. [Panel Op.] 1979) (explaining that 1977 amendment made inability to pay an affirmative defense and holding that, because "there was a complete failure to prove the affirmative defense of inability to pay by a preponderance of the evidence[, it] was not an abuse of discretion to revoke appellant's probation"); *Hill v. State*, 719 S.W.2d 199, 201–02 (Tex. Crim. App. 1986) (en banc)). At least one major and notable decision since, however, concluded that the 1977 codification did not dispose of that common-law requirement. *See id.* (citing *Stanfield*, 718 S.W.2d at 737–38 (concluding that, although the legislature had made inability to pay an affirmative defense, "the State still has the burden of proving an alleged failure to pay fees, costs, and the like was intentional")).

## C. Analysis

### 1. No Federal Constitutional argument presented

The court of criminal appeals concluded that *Bearden* does not place an evidentiary burden on the State. *Id.* at 156–57 (citing *Bearden*, 461 U.S. 668–69). Instead, *Bearden* imposes a judicial directive on the trial judge to "(1) inquire as to a

14

defendant's ability to pay and (2) consider alternatives to imprisonment if it finds that a defendant is unable to pay." *Id.* at 156.

Here, Martinez argues that the State presented insufficient evidence to show he had the ability to pay. Martinez, therefore, raises an evidentiary challenge only, and he does not present any argument citing to or based on *Bearden* and its mandatory judicial directive. Accordingly, we will not address *Bearden* and any application it may or may not have on the present case.[9] *See Gipson II*, 428 S.W.3d at 110–11 (Alcala, J., concurring) (concluding that appellant's "sufficiency-of-the-evidence challenge under the ability-to-pay statute may be addressed on appeal, but his complaint under the federal Constitution may not" because it had been forfeited); *see also* TEX. R. APP. P. 33, 47.1.

## 2. The unpaid fees are covered by the ability-to-pay statute

Both parties argue on appeal that all the unpaid fees are covered by article 42A.751(i) of the Texas Code of Criminal Procedure—the ability-to-pay statute.[10] *See* TEX. CODE CRIM. PROC. ANN. art. 42A.751(i). In the amended motion to revoke, the violations alleged by the State only involved Martinez's failure to pay fees, and all the fees were included and imposed in the conditions of his supervision. In addition to the statutory

---

[9] When community supervision is revoked for a failure to pay supervision fees, the outcome of a defendant's appeal "could be entirely different depending on whether the case is analyzed under the Texas statute or the federal Constitution." *Gipson II*, 428 S.W.3d at 111 (Alcala and Cochran, JJ., concurring).

[10] Effective January 1, 2017, the legislature repealed article 42.12 of the Texas Code of Criminal Procedure and enacted Chapter 42A, as part of a non-substantive revision of community supervision laws. *See* Act of May 26, 2015, 84th Leg., R.S. ch. 770 §§ 1.01, 3.01, 4.01–.02 (codified at chapter 42A of the Texas Code of Criminal Procedure); *Lombardo v. State*, 524 S.W.3d 808, 812 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The ability-to-pay statute, previously found in section 21(c) of article 42.12, is now codified in article 42A.751(i). *See* TEX. CODE CRIM. PROC. ANN. art. 42A.751(i); *Gipson II*, 428 S.W.3d at 108.

15

monthly fee, Martinez was found to have intentionally not paid: a crime stoppers fee, room and board fees for his stay at CBRISF, UA fees, and a psychological evaluation fee.

In *Gipson II*, the court of criminal appeals concluded that fines were not covered by the ability-to-pay statute, despite the language in the statute that stated it applied to a defendant's failure to pay "appointed counsel [fees], community supervision fees, or court costs." 428 S.W.3d at 109. The court's reasoning for this conclusion was two-fold: (1) the statute makes no mention of fines, and the legislature could have easily included it; and (2) "fees and [court] costs serve a remedial function by compensating the State for various costs associated with the criminal justice system." *Id.* In other words, fines, unlike court costs or supervision fees, are imposed as a form of punishment, like incarceration, and are not remedial in nature. *Id.*; *see Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011) (distinguishing fines from court costs and noting that "[f]ines are punitive, and they are intended to be part of the convicted defendant's sentence"); *Weir v. State*, 278 S.W.3d 364, 366–67 (Tex. Crim. App. 2009) (same). The court concluded "[i]t was not absurd for the legislature to distinguish between punitive and remedial monetary sanctions for the purpose of determining whether the State has the burden to show the defendant's ability to pay." *Gipson II*, 428 S.W.3d at 109.

The court of criminal appeals, however, left open the question of whether the ability-to-pay statute applies to fees like some of those before us. *See id.* at 112 n.1 (Johnson, J., concurring); *Gipson I*, 383 S.W.3d at 158–159 & n.3 ("The question remains whether the statute includes only those payments specifically enumerated or whether it applies to a fine and fees for Crime Stoppers and pre-sentence investigation."). Thus, the first question we must answer is whether the board and room fees, the psychological

16

evaluation fee, the UA fees, and the crime stoppers fee are "community supervision fees" as stated in the ability-to-pay statute.  *See* TEX. CODE CRIM. PROC. ANN. art. 42A.751(i).

Statutory construction is a question of law.  *Ramos v. State*, 303 S.W.3d 302, 307 (Tex. Crim. App. 2009) (citing *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008)).  "We construe a statute in accordance with its literal text unless the language of the statute is ambiguous or the plain meaning of the language leads to absurd results that the legislature could not have intended."  *Gipson II*, 428 S.W.3d at 108 (citing to *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (en banc)); *see Faulk v. State*, 608 S.W.2d 625, 630 (Tex. Crim. App. 1980) (en banc).

Article 42A.652 of the Texas Code of Criminal Procedure provides for a "monthly fee" a judge must impose on a defendant when placing him on community supervision. TEX. CODE CRIM. PRO. ANN. art. 42A.652.  This article is titled "monthly fee," not "community supervision fee."  *Id.*  Likewise, the body of article 42A.652 does not explicitly reference this fee as a "community supervision fee," but rather as a "monthly fee."  *Id.*

Looking at the literal and plain language of the ability-to-pay statute, we conclude that "community supervision fees" means the monthly fee required by statute *and* other fees imposed through the conditions of community supervision as part of a defendant's supervision.  *See* TEX. CODE CRIM. PROC. ANN. art. 42A.751(i); *Gipson II*, 428 S.W.3d at 112 n.1 (Johnson, J. concurring); *Gipson I*, 383 S.W.3d at 158–159 & n.3.  Here, all the fees in question assessed against Martinez serve a "remedial function by compensating the State for various costs associated with the criminal justice system," as do the other items covered by the ability-to-pay statute:  court costs and attorney's fees.  *Gipson II*, 428 S.W.3d at 109; *see* TEX. CODE CRIM. PROC. ANN. art. 42A.751(i); *Weir*, 278 S.W.3d at

17

366 (stating that court costs are intended as "nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case"); *see also Armstrong*, 340 S.W.3d at 767.  The fees that Martinez failed to pay were also all imposed in the conditions of his supervision.

Moreover, if we were to read the language in the ability-to-pay statute to cover only the monthly fee imposed on a defendant who is placed on community supervision, it would lead to an absurd result, as there is no apparent reason for the legislature to prescribe differing burdens of proof for violations of similar remedial monetary sanctions, each of which compensate the State for its expenses.  *Cf. Gipson II*, 428 S.W.3d at 109.  This is a logical conclusion supported by the court of criminal appeals' differentiation of fines from community supervision fees, court costs, and the costs of legal services, as stated in *Gipson II*.  *Id.* at 108–09 (noting that "fines are different from fees and costs because fines are imposed as punishment, like incarceration"); *see also* TEX. CODE CRIM. PROC. ANN. art. 42A.001(1) (West, Westlaw through 2017 1st C.S.) (defining "community supervision" and noting it suspends a defendant's imprisonment and fine); *id.* art. 42A.751(i); *Gipson II*, 428 S.W.3d at 110 (Alcala and Cochran, JJ., concurring) ("As also noted by the majority, because fines are punitive, they are characteristically different from the types of expenses listed in the ability-to-pay statute that are directed at recouping the expenses of the trial court in the prosecution of a defendant."); *Gipson I*, 383 S.W.3d at 153.

Furthermore, the legislature's use of "community supervision fees" in the ability-to-pay statute, instead of "monthly fee," supports the conclusion that the statute is meant to cover more than just the monthly fee a defendant is required to pay while on supervision.  This conclusion is also supported by the definition of "community supervision" in the code

18

of criminal procedure, which states community supervision is "a continuum of programs and sanctions, with conditions imposed by the court . . . ." *See* TEX. CODE CRIM. PROC. ANN. art. 42A.001. Therefore, we conclude that the "community supervision fees" in the ability-to-pay statute applies to any and all fees imposed on a defendant, as conditions of community supervision, which serve a remedial purpose of compensating the State for costs associated with the defendant's prosecution and community supervision. Accordingly, we conclude that all the fees Martinez failed to pay are covered by the ability-to-pay statute.

### 3. The State failed to carry its evidentiary burden

Having concluded that all the fees are covered by the ability-to-pay statute, we now review the sufficiency of the evidence underlying the revocation of Martinez's supervision. As mentioned above, the State had the burden of proving by a preponderance of the evidence that Martinez had the ability to pay and did not pay. The trial court found true the allegations for failure to pay the monthly statutory fee, the crime stoppers fee, and the UA fee, but only for the months for which there was evidence that Martinez had a source of income: August, September, October, and November of 2016 and April, May, and June of 2017. Franco testified appellant had an income of $1,200 per month during September, October, and November of 2016 and $500 per month during April, May, and June of 2017. The court stated that it also found true the alleged non-payment of the psychological fee from February 2016, and of the CBRISF room and board fees from July 2016, because appellant had earned income since those fees had been incurred—i.e., during the months testified to by Franco. It is undisputed that Martinez did not make payments for those months.

To consider a defendant's ability to pay, a trial court may consider evidence of the likely range of income, as well as likely living expenses or other liabilities, such as child support orders. *See Mathis v. State*, 424 S.W.3d 89, 95 (Tex. Crim. App. 2014); *Denton*, 511 S.W.2d at 312–13; *Pool v. State*, 471 S.W.2d 863, 864 (Tex. Crim. App. 1971); *see also Thomas v. State*, No. 07-14-00334-CR, 2016 WL 1072492, at *5 (Tex. App.—Amarillo Mar. 16, 2016, no pet.) (mem. op., not designated for publication) ("Generally speaking, cases concerning [a defendant's ability to pay] turn on whether the State proved a defendant's ability to pay in terms of his income and expenses."). When evidence that the probationer is unable to pay is not refuted by the State, and the trial court revokes community supervision, it is an abuse of discretion. *See Denton*, 511 S.W.2d at 312–13; *Matthews v. State*, 478 S.W.2d 943, 944 (Tex. Crim. App. 1972); *McKnight*, 409 S.W.2d at 859–60; *Pool*, 471 S.W.2d at 864. Proof of merely the failure to pay court costs or supervision fees is not sufficient; the State must show that the defendant could have paid and that his failure to do so was willful. *See Szczeck v. State*, 490 S.W.2d 576, 577 (Tex. Crim. App. 1973); *Matthews*, 478 S.W.2d at 944; *Pool*, 471 S.W.2d at 864.

In the case at hand, the State provided evidence, through Franco's testimony, that Martinez had a source of income for two periods between 2012 and August of 2017. Franco, however, did not testify that Martinez had the ability to make payments during the months for which the trial court found the allegations to be true; she only testified Martinez had a source of income. Martinez testified that he was unable to pay the fees, despite wanting to do so, because he had other bills and debts, including rent and utilities. The burden was on the State to prove Martinez could make payments, yet the State did not refute in any way Martinez's claim that his expenses kept him from being able to pay his

supervision fees. The State did not seek clarification or question Martinez about any of his monthly expenses, obligations, or possible dependents. *See Mathis*, 424 S.W.3d at 95. In other words, a source of income is just one component of a defendant's ability to pay, and the State did not show how Martinez had the ability to pay based on the income he received.

Finally, we note that the State asked Martinez: "You had an opportunity to pay but you didn't, right?", and Martinez answered "Yes." However, an opportunity to pay is not the same as the ability to pay; Martinez had the opportunity to pay because he had a source of income, but he may not have had the ability to pay during that period when he had the opportunity to do so because of bills and other expenses. This is especially true in a case, such as this one, where the evidence at the hearing established that Martinez had no bank accounts and had been unemployed for long periods of time before and after the short periods of time when he had a source of income. Martinez's testimony alluded at this. The State asked Martinez: "Well, let's put it this way; you've had jobs, right? And you didn't pay?", and Martinez answered "Yeah, because I kept getting let go or laid off."

Viewing the evidence in the light most favorable to the trial court's ruling, *see Brooks*, 323 S.W.3d at 899, we cannot conclude that evidence of a source of income, without more, equates to an ability to pay. *See Mathis*, 424 S.W.3d at 95; *Denton*, 511 S.W.2d at 312–13; *Matthews*, 478 S.W.2d at 944; *Pool*, 471 S.W.2d at 864; *cf. Lombardo v. State*, 524 S.W.3d 808, 813–15 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (affirming revocation of supervision for failure to pay restitution and noting that the trial court correctly concluded defendant had the ability to pay due to serious discrepancies between defendant's contentions and the evidence); *Greathouse*, 33 S.W.3d at 459

21

(noting that testimony indicated what appellant's living expenses were and concluding that the State rebutted the affirmative defense of inability to pay by showing that appellant had disposable income after subtracting rent, utilities, health insurance, and other necessary bills). Therefore, the trial court could not have found that Martinez had the ability to pay for any of the months alleged in the State's motion to revoke. Accordingly, we conclude that the trial court abused its discretion when it revoked Martinez's community supervision.

We sustain Martinez's second issue.[11]

### III. CONCLUSION

We reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

DORI CONTRERAS
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
1st day of November, 2018.

---

[11] Because we find Martinez's second issue dispositive, we need not reach his first and third issues. *See* TEX. R. APP. P. 47.1.

22