

# NUMBER 13-21-00250-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MONTE RODNEY SCALES JR.,                                           Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

## On appeal from the 36th District Court
## of San Patricio County, Texas.

# OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Opinion by Justice Benavides**

Appellant Monte Rodney Scales Jr. appeals the revocation of his community supervision for a failure to pay a court-ordered fine and fees.

By five issues, Scales argues: (1) there was insufficient evidence to show that he failed to pay the court-ordered fine; (2) there was insufficient evidence to show that he failed to pay the court-ordered fees and that he both had the ability to pay and willfully

refused to pay those fees; (3) his constitutional right to due process was violated by the trial court revoking his community supervision without first assessing whether Scales had the ability to pay; (4) his constitutional right to due process was violated by the trial court's failure to consider suitable alternatives to imprisonment; and (5) the trial court improperly assessed attorney's fees as a condition of Scales's community supervision. Because we conclude the evidence was insufficient to support the trial court's findings, we reverse and render.

## I. BACKGROUND

On January 1, 2017, Scales was indicted on two counts of violating a protective order with two or more prior convictions, a third-degree felony, and one count of invasive visual recording, a state jail felony. *See* TEX. PENAL CODE ANN. §§ 21.15, 25.07(g)(2). On June 26, 2017, Scales pleaded guilty to all three counts, was adjudicated guilty, and the trial court sentenced him to five years' confinement and a $750 fine for counts one and two, and two years' confinement for count three. The trial court suspended all three sentences and placed Scales on community supervision for five years.

On August 19, 2020, the State filed motions to revoke for all three counts. On January 25, 2021, the State filed amended motions to revoke for all three counts. As to count one, the count from which Scales now appeals, the motion to revoke alleged that Scales failed to comply with the following terms of his community supervision:

1.  Pay to the Supervision Officer of San[ ]Patricio County, Texas a Statutory Supervisory Fee of $60.00 per month . . . which is due within the first ten days of each month, beginning thirty (30) days after discharge from the State of Texas Intermediate Sanction Facility-Cognitive Track;

2.    Pay to the Supervision Officer of San Patricio County, Texas, an Application Fee of $100.00 for each interstate or intrastate transfer of community supervision, which is due within the first thirty days of community supervision, any transfers thereafter will require the fee to be paid on the date of application;

3.    Pay to the San Patricio County District Clerk, the amount of $300, **Instanter**, to be applied to the **Court Costs** and/or **Attorney Fees** (if applicable) in the amount of $2,108.00 and a **Fine** in the amount of $750.00;

4.    Pay to the San Patricio County District Clerk, the amount of $375.00 of which is probated and the remaining balance of $375.00 shall be paid at a rate of $____ per month, beginning _____, 2018, and the same day of each month thereafter until the [f]ine has been paid in full;

5.    Do not have contact or communicate directly or indirectly with the victim or victims in this cause by any means including written, internet, telecommunication[,] or third-party communication.

6.    Abstain from the possession and consumption of alcohol in any form during the term of community supervision.

At a hearing on July 6, 2021, Scales pleaded "not true" to each of the State's allegations. Mallory Gardner, the deputy director for the 36th, 156th, and 343rd Judicial District Community Supervision and Corrections Department, testified to some of the alleged violations. According to Gardner, on or about January 13, 2021, she was at Twin Peaks and noticed Scales went "to the bar and was served a beer in a cold mug." However, Gardner also testified that the following day, Scales took a urinalysis test that yielded a negative result for alcohol. Gardner agreed that alcohol stays in an individual's system for "[a]pproximately three [days], depending on the amount of consumption."

Additionally, Gardner discussed Scales's financial obligations. Gardner testified that Scales was delinquent in the amount of $640 for "probation fees" and $100 for "a

3

transfer fee." Gardner also explained that Scales had $2,083 in "total arrears" for failing to pay $60 per month for "the fines, fees[,] and court costs." Gardner testified to the specific months that Scales failed to make these required payments. However, Gardner agreed that Scales had made several large payments, including a $500 payment made on April 20, 2021, another "large payment" around the time the COVID-19 pandemic started, and one other payment of an unspecified amount at an unknown time.

Scales testified that he was sober because his mom used to be an alcoholic, and he "made her a promise that [he] wouldn't drink." According to Scales, Gardner observed him with a non-alcoholic beer. Scales also denied having inappropriate communications with the victim's daughter. Scales testified, "Well, last May, I almost died. I was in the hospital. My appendix had burst and when she found out that I was in the hospital, [the victim's daughter] reached out and asked me if I was doing okay and that's how it started." Scales testified that he and the victim's daughter had merely rekindled a friendship. He denied ever attempting to directly or indirectly communicate with the victim.

Scales discussed his unemployment history. Initially, Scales testified that he was laid off in "like March" of 2020. Scales later testified that he was actually laid off in either "April or May of 2020." According to Scales, the day before he was laid off, he purchased a 2020 Toyota Tundra that had a sticker price of $51,000. Scales traded in his old vehicle, and the dealership gave him a $25,000 credit towards the purchase price. Scales acquired a loan for the remaining balance. However, Scales testified that he had since "missed a few" payments on the car note.

Scales explained that "during the times [he] was laid off, [he] was unable to" make

4

his required community supervision payments. He also testified that he found a "good job" at the "end of March, beginning of April" 2021, and that he planned to become current on his community supervision obligations. No evidence was presented, either by the State or by Scales, concerning his income.

At the conclusion of the trial, the trial court revoked Scales's community supervision for count one and sentenced him to four years' imprisonment.[1] In its written judgment, the court found true the State's allegations that Scales violated provisions of his community supervision relating to: (1) paying a statutory supervisory fee of $60.00 per month, (2) paying an application fee of $100.00 for each interstate or intrastate transfer of community supervision within thirty days of the imposition of his community supervision, and (3) paying the non-probated amount of his fine "at a rate of $____ per month, beginning _____, 2018, and the same day of each month thereafter until the fine has been paid in full." (blanks in original). The judgment did not contain findings as to the State's remaining allegations.

This appeal followed. The State has not filed a brief.

## II. SUFFICIENCY OF THE EVIDENCE

By his first and second issues, Scales argues that the evidence is insufficient to show he violated the conditions of his community supervision.

### A. Standard of Review

We review an order revoking community supervision for an abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Rickels v. State*, 202

---

[1] As to counts two and three, the trial court continued Scales on community supervision. Counts two and three are not at issue in this appeal.

S.W.3d 759, 763 (Tex. Crim. App. 2006). "To convict a defendant of a crime, the State must prove guilt beyond a reasonable doubt, but to revoke probation (whether it be regular probation or deferred adjudication), the State need prove the violation of a condition of probation only by a preponderance of the evidence." *Hacker*, 389 S.W.3d at 864–65. In other words, the State need only show that the greater weight of the evidence creates a reasonable belief that the defendant has violated a condition of his probation. *Rickels*, 202 S.W.3d at 763–64. A trial court abuses its discretion by revoking probation when the State has failed to meet its burden of proof. *Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984). We examine the record in the light most favorable to the trial court's ruling. *Jones v. State*, 112 S.W.3d 266, 268 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.).

**B.    Analysis**

**1.    Fine**

A trial court is permitted to order the payment of a fine either (1) when the sentence is pronounced; (2) at some later date; or (3) at designated intervals. TEX. CODE. CRIM. PROC. ANN. art. 42.15(b)(1–3). Here, paragraph four of the community supervision conditions required Scales to pay his fine "at a rate of $_____ per month, beginning _____, 2018, and the same day of each month thereafter until the Fine has been paid in full."

The language and context of the fine provision indicates that nothing was due on the date the sentence was pronounced.[2] Although the intent of the provision appears to

---

[2] We note that paragraph three of the community supervision conditions required Scales to pay $300 to the San Patricio County District Clerk's Office "[i]nstanter." This provision explained that the $300

6

permit Scales to pay the fine in a specified amount over a period of designated intervals, the blanks indicating the amount he was to pay each month and the start date to begin payment were never filled.

Assuming but not deciding that paragraph four complies with Article 42.15(b) of the code of criminal procedure, we nevertheless conclude that the State has not met its burden to show by a preponderance of the evidence that Scales violated this provision. First, Gardner testified that the clerk's records did not "indicate a delinquent amount" for the fine Scales was ordered to pay, "just a balance." Gardner did not divulge the balance remaining on the fine. Second, even if Scales had not paid anything on the fine, he would have been compliant with the plain language of this provision, which required him to pay nothing each month until the fine had been paid in full. Scales's period of community supervision had not yet expired at the time of the final hearing, and even if it had, "[a] defendant remains obligated to pay any unpaid fine or court cost after the expiration of the defendant's period of community supervision." *Id.* art. 42A.651(b).

We therefore hold that the trial court abused its discretion by finding Scales violated this term of his community supervision.

### 2. Fees

The ability-to-pay statute, as it is commonly referred to, reads as follows:

In a revocation hearing at which it is alleged only that the defendant violated the conditions of community supervision by failing to pay community supervision fees or court costs or by failing to pay the costs of legal services as described by Article 42A.301(b)(11), the state must prove by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge.

instanter payment would be used, in part, to pay Scales's fine. Although the State alleged that Scales violated this provision, too, the trial court did not find that allegation to be true.

*Id.* art. 42A.751(i).

The Texas Court of Criminal Appeals has held that community supervision conditions relating to certain financial obligations, like fines, are exempt from the ability-to-pay statute. *See Gipson v. State*, 428 S.W.3d 107, 108–109 (Tex. Crim. App. 2014) ("*Gipson II*"). The *Gipson II* Court based this holding in part on the statute's silence concerning fines and the remedial purposes that the costs listed in the statute serve. *See id.* We previously interpreted *Gipson II* and Article 42A.751(i) together and concluded that the ability-to-pay statute covers "any and all fees imposed on a defendant, as conditions of community supervision, which serve a remedial purpose of compensating the State for costs associated with the defendant's prosecution and community supervision." *Martinez v. State*, 563 S.W.3d 503, 513–15 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). Accordingly, we conclude that the "statutory supervisory fee" and "application fee"—which are associated with compensating the State for Scales's community supervision in this case—are encompassed by the ability-to-pay statute. *See id.* at 515.

However, the ability-to-pay statute only requires the State to prove the defendant's ability to pay "[i]n a revocation hearing at which it is alleged *only* that the defendant violated the conditions of community supervision by failing to pay community supervision fees." TEX. CODE CRIM. PROC. ANN. art. 42A.751(i) (emphasis added). Some Texas courts have concluded that Article 42A.751(i) does not apply, and the State is not required to show that the defendant had the ability to pay, when a failure to pay fees and costs is not the only violation alleged by the State in its motion to revoke or at the hearing on its motion to revoke. *See Rushing v. State*, No. 12-21-00052-CR, 2022 WL 868715, at *3 (Tex.

8

App.—Tyler Mar. 23, 2022, no pet.) (mem. op., not designated for publication) ("Because the State alleged violations in addition to those listed in the ability-to-pay statute, the statute did not work to give the State the burden of proving that Appellant had the ability to pay her community supervision fees, and the trial court did not err by revoking Appellant's community supervision on that basis."); *Lopez v. State*, No. 13-18-00130-CR, 2019 WL 2381463, at *3 (Tex. App.—Corpus Christi–Edinburg June 6, 2019, no pet.) (mem. op., not designated for publication) ("Because the State alleged Lopez committed multiple violations of his community supervision, it was not required to prove Lopez had the ability to pay."); *Farr v. State*, No. 13-17-00297-CR, 2018 WL 4017118, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 23, 2018, no pet.) (mem. op., not designated for publication) ("Article 42A.751(i) does not apply because Farr's failure to pay his fines was not the only violation alleged by the State."); *Beard v. State*, No. 14-15-00606-CR & No. 14-15-00607-CR, 2016 WL 4533414, at *5 (Tex. App.—Houston [14th Dist.] Aug. 30, 2016, pet. ref'd) (mem. op., not designated for publication) ("[W]hen the *only* allegation at a community supervision revocation hearing is that the defendant failed to pay fees or court costs, the State must prove by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge.").

Here, more was alleged than just a failure to pay financial obligations: for count one, the State also alleged that Scales had inappropriate direct or indirect contact with the victim and consumed or possessed alcohol in violation of his community supervision conditions. However, the trial court's decision to revoke Scales's probation was based solely on his failure to pay the fine, a finding which we have already held was supported

by insufficient evidence, and his failure to pay certain community supervision fees.

"We interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended." *Scott v. State*, 55 S.W.3d 593, 596 (Tex. Crim. App. 2001). "If a literal reading of the statute leads to an absurd result, we resort to extratextual factors to arrive at a sensible interpretation to effectuate the intent of the legislature." *Griffith v. State*, 116 S.W.3d 782, 785 (Tex. Crim. App. 2003).

In this case, the State failed to meet its burden of proof on four out of the six violations alleged at the hearing. Nevertheless, pursuant to the literal meaning of Article 42A.751, the State was given an evidentiary advantage that it would not have enjoyed had it solely alleged the two financial violations we now analyze. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.751(i). In other words, application of the plain meaning of the statute rewarded the State for alleging additional violations that the trial court ultimately found unconvincing. *See id.* This is an absurd result that the Legislature could not possibly have intended.

Thus, we may consider the legislative history of Article 42A.751. *See Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex. Crim. App. 1991). In 2007, the Legislature shifted the burden of proving financial ability from the defendant to the State. *See* Act of Sept. 1, 2007, H.B. 312, 80th Leg., R.S., ch. 604, 2007 TEX. GEN. LAWS 1160, *repealed by* Act of Jan. 1, 2017, H.B. 2299, 84th Leg., R.S., ch. 770, § 1.01, 2015 TEX. GEN. LAWS 2321; *Lively v. State*, 338 S.W.3d 140, 145 (Tex. App.—Texarkana 2011, no pet.). House Bill 312 was intended to "conform[] the statute to the requirements of the Due Process Clause

10

as interpreted by the United States Supreme Court in *Bearden v. Georgia*," and "ensure that a probationer[']s inability to pay court costs due to economic constraints do[es] not result in the costly and extraordinary sanction of prison." House Comm. On Crim. Juris., Bill Analysis, Tex. H.B. 312, 80th Leg., R.S. (2007); *see Bearden v. Georgia*, 461 U.S. 660, 672–73 (1983) (holding that imprisoning a probationer for failing to pay "would be contrary to the fundamental fairness required by the Fourteenth Amendment" if the trial court did not also inquire into the reasons for the probationer's failure to pay and consider alternatives to imprisonment if the probationer failed to pay despite making "sufficient bona fide efforts to acquire the resources to" pay). The Legislature cited as a concern that over a third of probationers in Texas whose probation is revoked are sent "to prison for failure to pay probation fines, or, in other words, are sentenced to prison for being poor." *Id.*

The word "only" in the ability-to-pay statute is a holdover term from a prior version, which provided that an inability to pay was an affirmative defense the defendant must prove "[i]n a probation revocation hearing at which it is alleged only that the probationer violated conditions of the probation by failing to pay" fees. *See* Act of June 12, 1981, H.B. 865, 67th Leg., R.S., ch. 538, 1981 TEX. GEN. LAWS 2246, *repealed by* Act of Jan. 1, 2017, H.B. 2299, 84th Leg., R.S., ch. 770, § 1.01, 2015 TEX. GEN. LAWS 2321. In interpreting this prior version of the statute, the Texas Court of Criminal Appeals concluded that the Legislature, having generally placed the burden on the probationer to show his inability to pay, could not have contemplated that the word "only" would require the *State* to prove the defendant's ability to pay in cases where non-financial violations were also alleged.

11

*See Stanfield v. State*, 718 S.W.2d 734, 736 (Tex. Crim. App. 1986) (citing *Newsom v. State*, 372 S.W.2d 681, 683 (Tex. Crim. App. 1963) ("[W]hen a literal enforcement would lead to consequences which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and adopt a construction which will promote the purpose for which the legislation was passed.")). The Court instead concluded that, "when failure to pay probation fees, court costs[,] and the like is an issue in a revocation hearing, [the statute] is applicable regardless of whether a violation of another condition of probation is alleged." *Id.* at 737.

The Legislature transferred the burden of proof from the defendant to the State in 2007 but changed virtually nothing else in the statute. *Compare* Act of June 12, 1981, H.B. 865, 67th Leg., R.S., ch. 538, 1981 TEX. GEN. LAWS 2246 (repealed 2017), *with* Act of Sept. 1, 2007, H.B. 312, 80th Leg., R.S., ch. 604, 2007 TEX. GEN. LAWS 1160 (repealed 2017). What is good for the goose should be good for the gander. It would be manifestly unjust to conclude that applications of the statute's plain language were unreasonable when holding so benefitted the State, but that its applications have now become reasonable when they are detrimental to the defendant. Following *Stanfield*, we conclude that the word "only," as it appears in Article 42A.751(i), does not relieve the State of its burden of showing the defendant's ability to pay in cases such as this one, where non-financial violations were alleged but financial violations were the only ones found true. Instead, when failure to pay fees is an issue in a revocation hearing, Article 42A.751(i) is applicable regardless of whether a violation of another condition of probation is alleged. *See Stanfield*, 718 S.W.2d at 737; *Brown v. State*, 354 S.W.3d 518, 520 n.3 (Tex. App.—

Fort Worth 2011, pet. ref'd) ("The legislature's use of the word 'only' in the statute is not intended to lift the requirement that the State prove that the probationer was able to pay and did not pay as ordered by the judge when the State includes additional allegations of nonmonetary community supervision violations."). Accordingly, to obtain revocation solely on Scales's failure to pay fees in this case, the State was required to prove his ability to pay.[3]

"To consider a defendant's ability to pay, a trial court may consider evidence of the likely range of income, as well as likely living expenses or other liabilities, such as child support orders." *Martinez*, 563 S.W.3d at 515. "When evidence that the probationer is unable to pay is not refuted by the State, and the trial court revokes community supervision, it is an abuse of discretion." *Id.* The State's argument that Scales had the ability to pay his community supervision fees was based on two expenditures made by Scales. Specifically, the State argued that "on January 13th, 2021, [Scales] had disposable income to be at Twin Peak[s]," and that Scales "had enough money to buy a 2020 Toyota Tundra, which is a fifty-one-thousand-dollar vehicle." The State presented no evidence of Scales's average monthly income or his net resources.

Scales testified that he was "[g]etting food to go" "for [his] mom" when he was at

---

[3] In two memorandum opinions, this Court previously stated that under Article 42A.751(i), the State did not need to prove ability to pay when non-financial probation violations are also alleged. *See Lopez v. State*, No. 13-18-00130-CR, 2019 WL 2381463, at *3 (Tex. App.—Corpus Christi–Edinburg June 6, 2019, no pet.) (mem. op., not designated for publication); *Farr v. State*, No. 13-17-00297-CR, 2018 WL 4017118, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 23, 2018, no pet.) (mem. op., not designated for publication). However, in those cases, revocation was based on non-financial grounds as well as a failure to pay. *See Lopez*, 2019 WL 2381463, at *4; *Farr*, 2018 WL 4017118, at *3. Accordingly, our statements in those cases regarding the State's need to prove ability to pay are non-binding dicta. *See Oliva v. State*, 548 S.W.3d 518, 524 (Tex. Crim. App. 2018) ("[L]anguage in an opinion can be dictum if it is broader than necessary to resolve the case. This is so because a court might not have carefully considered fact situations that vary substantially from the one before it.").

Twin Peaks. There was no testimony as to how much the food cost, who ultimately paid for the food, or what food, besides the non-alcoholic beer, was purchased. Additionally, the evidence did not show that Scales paid $51,000 for his vehicle. Rather, the undisputed evidence showed that he traded in his former car for $25,000 off the sticker price and took out a loan to pay for the remaining balance on the Toyota Tundra. Scales testified that he needed a new car because his old one "was falling apart." At the time he purchased the car, he assumed he would be able to afford it, and the evidence shows he did make a "large payment" on his community supervision fees that month. However, "[t]he day after [he] got that truck, [he] got laid off with COVID." Scales testified that he had already "missed a few" of his car note payments. The State did not refute this testimony. *See Hacker*, 389 S.W.3d at 865 (Tex. Crim. App. 2013) ("Evidence does not meet [a preponderance of the evidence] standard when 'the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence' or when the finder of fact must 'guess whether a vital fact exists.'").

While Scales testified that he now had a "good job," no evidence was presented concerning his income. We have concluded in the past that "evidence of a source of income, without more," does not show "an ability to pay." *Martinez*, 563 S.W.3d at 516. The trial court had no evidence about Scales's net monthly resources, but it did have evidence that he had substantial debt in the form of car payments. Based on this, we cannot conclude that there was sufficient evidence showing that Scales had the ability to pay the assessed fees and costs. *See id.* Therefore, the trial court abused its discretion by revoking Scales's community supervision.

We sustain Scales's first and second issues. Because we have held that the trial court abused its discretion by revoking his community supervision based on insufficient evidence, we need not analyze Scales's remaining issues. *See* Tᴇx. R. Aᴘᴘ. P. 47.1.

### III. Cᴏɴᴄʟᴜsɪᴏɴ

We reverse the trial court's judgment revoking Scales's community supervision and sentencing him to prison. Because Scales's term of community supervision has expired, we render judgment discharging Scales from community supervision for count one. *See Davis v. State*, 591 S.W.3d 183, 194 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

GINA M. BENAVIDES
Justice

Publish.
Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Delivered and filed on the
10th day of November, 2022.

15